364 A.2d 895

**COMMONWEALTH of Pennsylvania**

v.

**Louis PANA, Appellant.**

Supreme Court of Pennsylvania.

Argued May 7, 1976.

Decided Oct. 20, 1976.

44

Defender Assn. of Phila., Benjamin Lerner, Defender, John W. Packel, Chief, Appeals Div., William L. Bowe, Asst. Defender, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Marianne E. Cox, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Louis Pana was arrested on December 30, 1973, and charged with burglary, criminal conspiracy and resisting arrest. On May 16, 1974, a jury returned a verdict of not guilty of resisting arrest and guilty of burglary and conspiracy. The court denied post-verdict motions and imposed a sentence of three to ten years imprisonment. The Superior Court affirmed the judgments of sentence in a per curiam order. Appellant petitioned this Court for allowance of appeal contending that the trial court committed reversible error by refusing to permit him to use an interpreter when he testified in his own behalf.[1] We agree, reverse the judgments of sentence, and remand for a new trial.

At the beginning of appellant's trial, the court appointed an interpreter to aid appellant, a native of Puerto Rico, in understanding the proceedings. The interpreter was present at all times during the trial. Before appellant took the stand, appellant's counsel requested at side bar that appellant be permitted to testify in Spanish. He stated that, although appellant spoke some English, he might misunderstand questions because of the emotional strain of testifying. The court denied the request stating that the interpreter would be permitted to

---

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1976). Because we reverse appellant's judgments of sentence and remand for a new trial, we need not address appellant's contention that he was denied his right to challenge the admissibility of his confession.

aid appellant with particular questions if the court deemed it necessary. Thus, although the interpreter sat near appellant during appellant's testimony and although he aided appellant with particular words and phrases on eight occasions, appellant was required to testify without the use of the interpreter. This, appellant contends, denied him his fundamental right to testify effectively in his own behalf.

The record is replete with instances when appellant, while testifying, did not understand questions, fumbled with answers, and spoke in broken English. For example, his direct examination began as follows:

"Q. [by appellant's attorney] Mr. Pana, do you remember being arrested late in the afternoon of December 30, 1973?

A. [by appellant] Yeah.

Q. Now, where were you when you were arrested?

A. Where I was?

Q. Where were you?

A. Where I was before?

Q. No, at the afternoon of your arrest, where were you?

A. Where I was? I remember it was between, it was Fourth Street and Lawrence Street. That was on Dauphin Street.

Q. Well, what street were you on?

A. Huh?

Q. What street were you on?

A. Dauphin Street."

On cross-examination, appellant became nearly incoherent, prompting one juror to state his concern over appellant's language difficulty.[2] His difficulties became so

---

2. "Q. [by the assistant district attorney] Now, you said that while you were walking on Dauphin Street a wagon pulled up; is that right?
A. [by appellant] (No Answer.)

acute that the assistant district attorney joined the defense request for use of the interpreter. However, rather than allowing the interpreter to help appellant as requested by both appellant and the Commonwealth, the

Q. Well, while you were walking on Dauphin Street, a wagon pulled up, a police wagon?
A. (No answer.)
Q. You don't understand what I said?
A. No.
Q. You don't understand what I said?
BY THE COURT:
Q. Do you know what a police wagon is?
A. Oh, yeah, yeah, I know a police wagon.
THE COURT: Ask the question again.
BY MISS KRESS [assistant district attorney]:
Q. While you were walking—do you know what the word 'walk' means?
A. Yeah.
Q. While you were walking on Dauphin Street, a police wagon came up; is that your testimony?
A. Wagon, you ask me why?
Q. Wagon?
Q. While you were walking on Dauphin Street, a police wagon came up; is that your testimony?
THE WITNESS: I don't understand that word.
JUROR NUMBER TWO: He does not understand one word, 'while.'
BY THE COURT:
Q. You're walking on Dauphin Street and the police wagon came up. Do you know what it means to walk?
A. I know.
Q. You were walking on Dauphin Street, a police wagon came up right?
A. Right.
I don't understand that word, that's why I—
THE COURT: Would you rephrase the question for him? He knows.
BY MISS KRESS:
Q. When you were walking on Dauphin Street, a police wagon came up; is that right?
A. Say again?
Q. When you were walking on Dauphin Street, a police wagon came up; is that right?
MR. SILVERSTEIN: Your honor, perhaps if the District Attorney were to rephrase her questions in an interrogative form, rather than making a statement?
MISS KRESS: The question can be translated.
Q. When you were walking on Dauphin Street, a police wagon came up; is that right?
THE WITNESS: came down?"

trial court required the assistant district attorney to re-phrase questions and implied before the jury that appellant's language difficulty was a fabrication.[3] On twenty-seven occasions appellant either asked that the question be repeated or he answered with a question. Thus, much of appellant's testimony might well have been not understood at all, misunderstood or misinterpreted by the jury, not because appellant was trying to be deceptive, but because of his inability to understand and to speak English adequately.

A defendant's ability to use an interpreter encompasses numerous fundamental rights. The failure to understand the proceedings may deny him his right to confront witnesses against him, his right to consult with his attorney, or his right to be present at his own trial. See *United States ex rel. Negron v. State of New York,* 434 F.2d 386 (2d Cir. 1970); *United States ex rel. Navarro v. Johnson,* 365 F.Supp. 676, 681 n. 3 (E.D.Pa.1973); see generally Annotation, Right of Accused to Have Evi-

---

**3.** "Q. [by the assistant district attorney] Did you ever push or shove any of the police officers?
A. [by appellant] Shove?
(Whereupon the word, 'shove,' was interpreted by the Official Interpreter for the Witness.)
BY THE COURT:
Q. Do you know what it means to push?
A. Yes, I understand that.
BY MISS KRESS [assistant district attorney]:
Q. Did you push or shove either of the officers?
A. I don't understand 'shove.'
THE COURT: Use one word.
BY THE COURT:
Q. Did you push the police officers?
A. If I push?
Q. Yes.
A. He said, 'Shove.' I don't understand that word.
Q. Push. Do you understand push?
A. (Shakes head negatively.)
MISS KRESS: Perhaps we should use the interpreter at this point on the direct and cross. He's having a lot more difficulty.
THE COURT: I don't see any difficulty with him.
MISS KRESS: All right.
THE COURT: Just take your time."

dence or Court Proceedings Interpreted (hereinafter "Annotation"), 36 A.L.R.3d 276 (1971). The use of an interpreter may also be necessary to protect appellant's right to testify in his own behalf. See *United States v. Carrion*, 488 F.2d 12 (1st Cir. 1973), cert. denied, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). As the Court of Appeals stated in *Carrion*:

"If the defendant takes the stand in his own behalf, but has an imperfect command of English, there exists the  .  .  .  danger that he will either misunderstand crucial questions or that the jury will misconstrue crucial responses."

488 F.2d at 14.

The decision to use an interpreter rests in the sound discretion of the trial judge. See *United States v. Carrion*, supra; *United States ex rel. Negron v. State of New York*, supra; Annotation § 7, 36 A.L.R.2d at 293 (1971). This is necessary because numerous factors such as the complexity of issues and testimony and the language ability of defendant must be taken into consideration. *United States v. Carrion*, supra. However, in view of the important rights involved, the trial court must consider all relevant factors in its initial determination of need. If it becomes apparent that an interpreter is necessary during the trial, the court should, on its own motion or on motion of a party, make an interpreter available. See *United States ex rel. Negron v. State of New York*, supra.

Here, the court apparently felt that appellant had sufficient language difficulties to require appointment of a court interpreter. However, the court refused to allow appellant to testify in Spanish despite appellant's obvious difficulties in understanding and in testifying, despite requests by both appellant and the Commonwealth, despite the comment by a juror and despite the presence of the interpreter in court. In short, the

court's action could serve no purpose.[4]   In these circumstances, the court's refusal to permit the use of the interpreter denied appellant his right to testify effectively in his own behalf and was prejudicial error.

The court not only refused to use the interpreter, it further prejudiced appellant by implying before the jury that appellant was fabricating his language barrier.   There can be no justification for such a remark.   A trial judge should not express his personal opinion concerning the credibility of appellant's testimony.   ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.6 (Approved Draft, 1972).   Moreover, even the denial of a motion for an interpreter should be made out of the presence of the jury because of the negative inference that may be drawn from the court's refusal.   Annotation § 2(b), 36 A.L.R.3d at 283–84.   This standard was violated here when the Commonwealth's request for use of the interpreter on cross-examination was denied before the jury.

That appellant was able to communicate in English is not dispositive.   At least one court has observed that a witness may be unable to understand or respond to questions, particularly on cross-examination, due to the tense-

4.   In his opinion denying post-verdict motions, the trial judge stated that using the interpreter would have caused "unnecessary delay."   In fact, appellant's testimony would have been expedited by using the interpreter, who was present at the time appellant testified, because the long delays caused by appellant's lack of understanding would have been avoided.

The Commonwealth now argues in its brief that the trial court's ruling was necessary to allow for proper cross-examination.   The use of an interpreter when not required, it argues, gives appellant an extra few seconds to think over his answers. This argument must fail for at least three reasons.   First, the Commonwealth cannot now argue a position it abandoned at trial, when it joined in the request for use of the interpreter. Second, it ignores the record, which establishes appellant's need for an interpreter.   Third, the jury must determine the credibility of the defendant, based on his actions throughout the trial, and if he attempted to use such deception it would most probably be apparent to them.

ness and unfamiliarity of the circumstances, even though he has some familiarity with English. *United States v. Frank*, 494 F.2d 145, 157 (2d Cir.), cert. denied, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974). The record establishes that such was the case here.[5]

Appellant's credibility was a critical factor at trial. There is nothing in the record to support the court's refusal to allow him to testify in Spanish. Its arbitrary action discriminated against the rights of those not fluent in English and denied appellant his right to testify in his own behalf. As the court stated in *Negron*:

"Particularly inappropriate in this nation where many languages are spoken is a callousness to the crippling language handicap of a newcomer to its shore, whose life and freedom the state by its criminal processes chooses to put in jeopardy."

434 F.2d at 390.

Judgments of sentence reversed; case remanded for a new trial.

O'BRIEN, J., filed a dissenting opinion in which EAGEN, J., joins.

O'BRIEN, Justice (dissenting).

I must respectfully dissent. I agree with the conclusion of the majority that due process requires that a defendant, who is incapable of communicating to the court and defense counsel in the English language, have access to an interpreter to assist such a defendant in understanding the proceedings and to assist in his defense. *United States ex rel. Negron v. State of N.Y.*, 434 A.2d 386 (1970). In *Negron* the defendant spoke no English,

---

5. Appellant, on direct examination, was able to state his version of events in narrative form, although he used very broken English. However, on both direct and cross-examination, he had great difficulty responding to questions. Moreover, there was no reason for deception during most of the cross-examination because the Commonwealth was merely asking appellant to repeat his previous testimony.

52.

and had just recently arrived in this country for his second visit shortly before the homicide of which he was convicted. Moreover, the Suffolk County Court in New York did not appoint a court interpreter to assist the defendant Negron.

In the instant case, appellant was a ten-year resident of the United States and demonstrated a sufficient command of the English language to comprehend the nature of the proceedings and to assist defense counsel. Unlike *Negron, supra,* a court interpreter was present and permitted to assist appellant whenever he or his attorney requested such help and, in fact, appellant consulted the interpreter eight times during his testimony. Moreover, appellant's testimony on direct examination, while not phrased in grammatically proper sentences, reveals an understanding of the questions and the effect of his answers. In contrast to appellant's short answers on cross-examination, appellant's direct examination reveals a narrative chronology of the events surrounding the burglary.

Given the confusing nature of translated testimony to the jury, I am of the opinion that an appellate court should not overturn a ruling of a trial judge absent an abuse of discretion. In the facts of the instant case, I find no abuse of discretion and would affirm the judgment of sentence.

EAGEN, J., joins in this dissenting opinion.