Jose Gonzalez, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 15, 1978, before Judges CRUM-
LISH, JR., WILKINSON, JR. and CRAIG, sitting as a panel
of three.

*Michael Goldberg,* with him *Alan Linder,* for peti-
tioner.

*Michael Klein,* Assistant Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., December 6, 1978:

Jose Gonzalez (Claimant) appeals a decision of the Unemployment Compensation Board of Review (Board) affirming a referee's determination of ineligibility under Section 402(e) of the Unemployment Compensation Law.[1]

We affirm.

Claimant, who speaks only Spanish, was hired under the CETA[2] program by the City of Lancaster in April, 1975, and worked for 11 months as a laborer in the city garage. The Board found that he was first warned about absenteeism after he missed 135 hours of work within a three-month period; that further absenteeism prompted a second written warning in February, 1976; that these absences were unreported; that Claimant was suspended for three days when he left the work site because he was dissatisfied with a work assignment; and that he was finally discharged in March, 1976, because of his excessive and unreported absenteeism.

Claimant first urges on appeal that Employer failed to adduce competent evidence of willful mis-

---

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), provides in pertinent part, as follows:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .

[2] Comprehensive Employment and Training Association (appears as ACIDA in the Notes of Testimony).

conduct sufficient to sustain his burden of proof and to support the Board's finding of willful misconduct.[3]

It is well settled that the burden of proving willful misconduct rests with the employer. This burden may be shouldered by proof that an employee has been excessively absent, and that an employee has disregarded absentee warnings, *Pettey v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 157, 325 A.2d 642 (1974), or by proof of an employee's failure to report absences in the manner prescribed by his employer, *Mentz v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 287, 370 A.2d 1232 (1977); *Unemployment Compensation Board of Review v. Kells,* 22 Pa. Commonwealth Ct. 479, 349 A.2d 511 (1975).

Claimant's attack on the Board's findings is premised on his belief that the only evidence of excessive and unreported absenteeism is hearsay which, alone, cannot support a finding of willful misconduct.

At the referee's hearing, Howard Goldberg, the City's personnel manager, testified on the issue of Claimant's absenteeism and his warnings and suspension. He further testified that CETA employees were required to notify their supervisor of any intended absences. Edwin Ewell, the City's CETA coordinator, testified that Claimant did not give the requisite notice of his intended absence to his supervisor, the crew leader.

There is no indication that the testimony of the two employer's representatives regarding Claimant's

---

[3] Our scope of review in unemployment compensation cases is limited to questions of law and, absent fraud, a determination as to whether the Board's findings are supported by the evidence. Questions of credibility, evidentiary weight and inferences to be drawn from the evidence are within the Board's province to decide. *Gallagher v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 160, 378 A.2d 502 (1977).

record of absenteeism was not based on first-hand knowledge. However, evidence of Claimant's failure to report his intended absences to his crew leader at the garage is based on hearsay.[4] Although a finding based solely on hearsay cannot stand, hearsay admitted without objection will be given its natural probative effect if corroborated by any competent evidence. *Elkowitz v. Unemployment Compensation Board of Review*, Pa. Commonwealth Ct. , 387 A.2d 160 (1978); *Harrison v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 364, 383 A.2d 965 (1978).

Claimant's testimony corroborates any hearsay in the record. Through a translator, he testified that he was absent from work "very often because he felt ill,"[5] that he received two written warnings regarding his absenteeism, and that he was suspended for leaving the work site. Although Claimant testified that he called the garage every day when he was sick, he also gave testimony from which the Board could infer his failure to give the required *advance* notice of absence to his crew leader:

Q. Is there anything else you want me to know, Mr. Gonzalez?

A. He said when he was absent and would return to work his crew leader would call him and ask him why he was absent. He said he was sick and the crew leader would say that's

---

[4] The record discloses that the two Employer's representatives worked at 120 North Duke Street which is the address of the City of Lancaster's Municipal Building, and that Claimant was employed at the City Garage on Broad Street. Apparently, their testimony regarding Claimant's failure to report his absences to his crew leader at the garage is based on information obtained from the crew leader.

[5] Notes of Testimony of the June 30, 1976 hearing, page 4.

no reason why you should be absent—you have to work.[6]

Thus, the combination of hearsay evidence and Claimant's own testimony forms competent evidence sufficient to carry Employer's burden of proof.[7] *Costa v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 7, 374 A.2d 1012 (1977); *Pilchesky v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 200, 370 A.2d 963 (1977).

Claimant also contends that the referee's failure to explicitly advise him of his right to have counsel, to produce and cross-examine witnesses, and to make evidentiary objections was error. While it is desirable that referees so advise unrepresented claimants, particularly where the claimant is not fluent in the English language, we have held that neither considerations of due process nor the rules of procedure governing referee hearings in unemployment compensation cases mandate such affirmative assistance. *Unemployment Compensation Board of Review v. Tumolo*, 25 Pa. Commonwealth Ct. 264, 360 A.2d 763 (1976); *Paoloco v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 214, 309 A.2d 594 (1973). Neither party was represented by counsel and the referee sought evidence from all three witnesses. There is

---

[6] Notes of Testimony of the June 30, 1976 hearing, page 5.

[7] In so holding, we necessarily dispose of Claimant's contention that the lack of testimony by his crew leader forecloses any finding of fact that Claimant failed to properly report his absences. Claimant cites our decision in *Unemployment Compensation Board of Review v. Stiles*, 19 Pa. Commonwealth Ct. 38, 340 A.2d 594 (1975). His reliance is misplaced since, unlike *Stiles, supra,* in the instant case it is Claimant's own testimony which contributes to the support of the Board's decision. *Pilchesky v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 200, 370 A.2d 763 (1977).

no merit to Claimant's contention that the referee assumed an adversary posture during his questioning.

Claimant further contends that he was denied a full and fair hearing because of inadequate interpretive services. However, the record indicates that Claimant was allowed access to, and permitted to testify through, a translator who was present throughout the entire proceeding.[8] There is nothing in the record to indicate that the translator ever refused a request by Claimant to translate or explain, or that the translator was incompetent, or that the referee in any way impeded Claimant's ability to utilize the translator's skills. Therefore, we hold that the interpretive services in the instant case satisfied the demands of due process. See Commonwealth v. Pana, 469 Pa. 43, 364 A.2d 895 (1976).

We have carefully reviewed the record in this case to determine whether in any way the referee's hearing was constitutionally deficient. Claimant has failed to demonstrate a violation of due process because he has not shown either a specific deprivation of his rights or a lack of fairness that tainted the entire proceeding. Knox v. Unemployment Compensation Board of Review, 12 Pa. Commonwealth Ct. 588, 317 A.2d 60 (1974). Therefore, we hold that the referee's hearing met the stringent demands of due process.

Accordingly, we

ORDER

AND Now, this 6th day of December, 1978, the order of the Unemployment Compensation Board of Review, dated May 26, 1977, denying benefits to Jose Gonzalez, is hereby affirmed.

---

[8] The record does not indicate whether the translator, Naomi Hernandez, was provided by the referee or whether she had accompanied Claimant to the hearing.

DISSENTING OPINION BY JUDGE CRAIG:

I respectfully dissent from that portion of the majority opinion which holds that claimant received a full and fair hearing before the Unemployment Compensation Board of Review. For this claimant, who speaks only Spanish, I would remand the case for a rehearing to be conducted with a complete, not partial, utilization of the interpreter.

The record here shows that an interpreter, apparently competent, was provided for this claimant. It also shows that the referee's questions to claimant and claimant's answers were translated contemporaneously; that is, each question was translated to claimant as it was put by the referee, and claimant's answers were immediately translated into English for the referee.

However, claimant was not given an ongoing translation of the questions and answers in the testimony of the two employer witnesses against him.

Following the initial testimony by an employer witness as to claimant's pay, work capacity and work history, those matters—the content of four sets of questions and answers—were summarized by the referee and translated to claimant in an aggregate statement, obtaining his affirmative response. Then the rest of the employer witness testimony as to willful misconduct, contained in another series of four sets of questions and answers (two of the answers being lengthy), was given without any translation of the separate questions and answers being given to claimant. The referee instead merely summarized all of the adverse testimony, in just two sentences, and asked the interpreter to relay that summary to claimant for his answer.

Although I have no question as to the sincerity and conscientiousness of the referee, a party handicapped by a language barrier is simply not placed on

the same footing as the opposing party if he is not permitted to understand each question and answer as it is put.

At the least, a party in such a situation is forced to receive his understanding of all of the adverse testimony in an aggregate mass and therefore is unable to formulate his responses on a statement-by-statement basis, as an English-speaking party could have done.

*Commonwealth v. Pana*, 469 Pa. 43, 364 A.2d 895 (1976), although a criminal law case, is helpful in pointing out that, even where the defending party speaks some English, the mere availability of an interpreter is not equivalent to the interpreter's assistance on each question and answer.

It seems apparent that equal protection of laws, as well as due process, requires that everything possible should be done to insure that a claimant has the same opportunity to hear and understand the content of the hearing as is possessed by the employer representatives. Yet, the manner in which this hearing was conducted had the same effect as if claimant had been excluded from the room during the specific questions and answers of the employer testimony, and then readmitted to the room only for the referee's summary.

Although the majority opinion points out that the interpreter did not refuse any request by claimant for a translation and that the referee did not impede claimant's ability to use the interpreter, there is also nothing in the record to indicate that either the referee or the interpreter let claimant, who was not represented by legal counsel, know that he could have received a contemporaneous translation. I submit that a language-handicapped person, already immersed in the confusion of a proceeding conducted in an unintelligible language, should not be deemed to have

waived his fundamental right to an understandable hearing in such a situation.

I would remand this case for a rehearing before the referee, with instructions that each of the questions and answers to and from other witnesses, as well as the questions and answers in claimant's own testimony, be translated for claimant immediately after each question and answer is spoken.