## BETHLEHEM AREA SCHOOL DISTRICT, Petitioner

v.

## Diane ZHOU, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 12, 2009.

Decided July 24, 2009.

Kristine Marakovits–Roddick, Bethlehem, for petitioner.

Diane Zhou, respondent, pro se.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Bethlehem Area School District (District) appeals from an order of the Special Education Due Process Appeals Review Panel (Appeals Panel) ordering the District to produce a transcript of proceedings translated into Mandarin Chinese for the benefit of Diane Zhou (Zhou), *pro se* Respondent herein. We reverse.

Zhou is the parent of M.Z., who is eligible for, *inter alia,* gifted educational services as a student of the District. On May 8, 2008, Zhou initiated a challenge to the appropriateness of the gifted services being provided to her child by requesting a due process hearing from the Pennsylvania Department of Education (Department), Office of Dispute Resolution (ODR). Thereafter, a hearing was held before ODR Hearing Officer William Culleton, Jr. Following Zhou's request, and pursuant to the Hearing Officer's apparent reliance upon the Special Education Dispute Resolution Manual (July 2005 ed.) [1] published by ODR (the ODR Manual), an interpreter was provided during the entirety of the hearing proceedings to assist Zhou, whose

---

1. The ODR Manual is not a part of the record to this matter, with the exception of one excerpted section within the District's subsequently filed Motion to Deny Parent's Request for Translation of Hearing Transcript. Original Record (O.R.) at Item 13, p. 3.

native language is Mandarin Chinese. Following three days of hearings, Hearing Officer Culleton found in favor of the District.[2] *Sua sponte,* Hearing Officer Culleton requested that his forthcoming written order and opinion be translated into Mandarin Chinese for Zhou's benefit, and the District complied therewith.

By various emails dated October 31, 2008, through December 1, 2008, Zhou requested that ODR provide to her a copy of the transcripts of proceedings before the Hearing Officer translated into her native Mandarin Chinese. O.R. at Item 9. ODR informed Zhou that it was not responsible for any translation of the transcript, but that the District did have that responsibility. Reproduced Record (R.R.) at 239a, 245a. The District subsequently also declined Zhou's request, and on November 14, 2008, filed a Motion to Deny Parent's Request for Translation of Hearing Transcript with the Appeals Panel.[3] Without any proceedings on the District's Motion and/or Zhou's translation request, the Appeals Panel issued an order dated December 9, 2008, granting Zhou's request, requiring the District to provide a translated transcript of the proceedings, and granting Zhou an extension of time within which to file exceptions to the Hearing Officer's decision dependent upon the date on which Zhou received the translated transcript. The District now appeals.[4]

■ This Court's scope of review of an order of the Appeals Panel is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. *E.N. v. M. School District,* 928 A.2d 453 (Pa.Cmwlth.2007), *petition for allowance of appeal denied,* 596 Pa. 748, 946 A.2d 689 (2008).

The District presents three issues: 1.) Whether the District is required by law to provide the translated transcript at issue herein; 2.) Whether the Appeals Panel is vested with the authority to order the District to provide the translated transcript, and; 3.) Whether Zhou submitted a timely and proper request for the translated transcript.

We first address the issue of whether any authority exists requiring the provision of a translated transcript to Zhou. No such authority exists, under Pennsylvania or Federal law.

■ The constitutionally protected rights afforded by due process, which apply to administrative proceedings such as the one *sub judice,* includes the right to be heard which, in certain circumstances, include the right to assistance from an interpreter during the proceedings itself. *See generally, Commonwealth v. Pana,* 469 Pa. 43, 364 A.2d 895 (1976); *Gonzalez v. Unemployment Compensation Board of Re-*

**2.** The merits of Zhou's challenge to the gifted educational services provided to her child are not at issue in the instant proceedings.

**3.** In its brief to this Court, the District asserts that the Appeals Panel declined to rule on the District's Motion for jurisdictional reasons. However, no such denial, and no communication of any kind from the Appeals Panel addressing the District's Motion, is contained within the record.

**4.** The District originally filed with this Court a Petition for Permission to Appeal, and a sub-

sequent Application for Supersedeas. By order dated January 6, 2009, this Court stayed the Appeals Panel's order pending disposition of the District's Petition, and pending an answer to District's Application. By order dated January 15, 2009, we concluded that the order of the Appeals Panel qualifies as a collateral order pursuant to Pa. R.A.P. 313 and was thusly properly before this Court, granted the District's Application for Supersedeas, and granted expedited status to the instant matter.

*view,* 39 Pa.Cmwlth. 70, 395 A.2d 292 (1978); *see also, generally, U.S. ex rel. Negron v. State of N. Y.,* 434 F.2d 386 (2nd Cir.1970). Under Pennsylvania and Federal statutes, the provision of interpretive services applies only to administrative or other proceedings, but not to the provision of translated transcripts thereof.[5] *See* Section § 563 of the Administrative Agency Law, 2 Pa.C.S. 563 (authorizing the appointment of interpretive services during administrative proceedings by the presiding officer); 28 § U.S.C. 1827 (authorizing the appointment of an interpreter by a presiding judicial officer upon determination of need therefor). However, no authority exists extending the qualified right to interpretive services during administrative or judicial proceedings to the provision of translated transcripts of those proceedings upon their completion.

Further, parties generally have no right to have transcripts—whether translated, or in English—provided to them at no cost. The sole exception to this rule exists under certain circumstances where a party has been determined to be indigent. *See Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). In the instant matter, Zhou has not been determined to be indigent, and has made no request for such a determination, and therefore the sole exception to this general rule is inapplicable herein.

■ In summation, there is no Federal or Pennsylvania Constitutional, statutory, or regulatory authority for the provision of a free transcript—translated or otherwise—of an administrative proceeding to a non-indigent party. Additionally, Zhou does not cite to any such authority.

We next address the Appeals Panel's stated authority for its order directing the District to provide, and to absorb the not insignificant cost[6] of, the translated transcript at issue. In its opinion in support of its December 9, 2008, order, the Appeals Panel wrote:

> In Pennsylvania, parents are entitled to a copy of the transcript of a due process hearing. Special Education Dispute Resolution Manual (July 2005) § 804(A). A parent who requires translation of the transcript of the proceedings is instructed to so advise [ODR]. *Id.,* § 806(A). Other accommodations for the hearing such as the need for a translator are arranged through the local education agency (LEA) or school district. *Id.,* § 806(B).

O.R. at Item 1. The ODR Manual is the sole cited authority for the Appeals Panel's order in relation to this matter. *Id.*

However, the ODR Manual does not rise to the level of a properly promulgated Pennsylvania regulation, and does not have the force of law. Our Supreme Court has stated:

> Administrative regulations are subject to the publication requirements of the Administrative Agency Law,[23] while statements of policy are exempt from the filing requirements.[24]

---

5. We emphasize that there is no dispute in the instant matter over the interpretive services provided to Zhou for the duration of the proceedings before the Hearing Officer.

6. Although no finding is present on the record, the District asserts that the transcripts at issue include approximately 791 pages, at a potential cost for translation of $40,564.13. District Brief at 9.

23. The Administrative Agency Law defines a "regulation": " 'Regulation' means any rule, regulation or order in the nature of a rule or regulation, of general application and future effect, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency." 71 P.S. § 1710.2(e) (1962) [repealed and subsequent-

ly replaced by Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101]....

24 The Administrative Agency Law makes no reference to statements of policies. Statements of policy which are not rules or regulations are not subject to the publication requirements of the Administrative Agency Law. The Commonwealth Documents Law defines statements of policy as: "any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency." 45 P.S. § 1102(13)[ ]. The Commonwealth Documents Law retained a similar definition of rule or regulation as the Administrative Agency Law. Compare 71 P.S. § 1710.2(e) [ ] with 45 P.S. § 1102(12)[ ]. This evidences a recognition that statements of policy can be other than rules or regulations.

\* \* \*

In holding that these guidelines are not regulations, we are persuaded by the reasoning of the Court of Appeals for the District of Columbia [Circuit], a court with extensive experience in reviewing administrative determinations. In *Pacific Gas & Electric Co. v. FPC*, [164 U.S.App.D.C. 371,] 506 F.2d 33, [38, (1974) ] ... [t]he court articulated the distinction between substantive rules which must be promulgated through rule-making procedures and statements of policy which require no such procedures:

"An administrative agency has available two methods for formulating policy that will have the force of law. An agency may establish binding policy through rulemaking procedures by which it promulgates substantive rules, or through adjudications which constitute binding precedents. A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement

to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.

[\* \* \*]

The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings.... A properly adopted substantive rule establishes a standard of conduct which has the force of law.... The underlying policy embodied in the rule is not generally subject to challenge before the agency.

A general statement of policy, on the other hand, does not establish a 'binding norm'.... A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued."

*Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 346–350, 374 A.2d 671, 677–679 (1977) (additional citations and footnotes omitted; emphasis added).

■ In the instant matter, our review of the Pennsylvania Code reveals that the ODR Manual has not been listed as a Pennsylvania regulation subjected to the proper adoption and implementation procedures required of regulations in our Commonwealth. While it is inarguable that the Department is a Commonwealth agency enabled by the Administrative Agency Law to promulgate regulations,

the ODR Manual, under the analysis excerpted above, cannot be read to have the force of law, but is, at best, a statement of ODR policy. *Norristown.* As such, the Appeals Panel, relying solely on the policy statements contained within the ODR Manual[7] as authority for its December 9, 2008, order, was without the authority under law to order the District to provide the translated transcript at issue herein.

Finally, the District argues that Section 806(a) of the ODR Manual requires that a parent seeking a translated transcript "should notify ODR of that need in advance" of the proceeding to be transcribed. District Brief at 27. As such, the District argues that Zhou's request for a translated

transcript, which was made following the conclusion of the three-day hearing in this matter, was untimely. Given our foregoing disposition, we will not address this issue.

Accordingly, we reverse.

## ORDER

AND NOW, this 24th day of July, 2009, the order of the Special Education Due Process Appeals Review Panel dated December 9, 2008, at No. 1920, is reversed.

---

**7.** We emphasize, tangentially, that the ODR is free to assume the obligation to provide a free transcript, and/or a translated transcript, of its own accord under its own policy as articulated by its Manual. We further note that this case does not address, expressly or impliedly, the ODR's obligation to adhere to its own Manual policy statements in regards to that provision. We further note that, while the Manual itself has not been entered into the record in this matter, its own plain language as excerpted by the District in its brief clearly indicates that ODR offers to provide "one free copy of the transcript" to a proceeding to a parent who timely requests one, and that

ODR itself expressly assumes the responsibility to receive requests for translated transcripts, while assigning only "other accommodations," such as a translator at a hearing, to a Local Educational Agency (LEA) such as the District in this matter. As such, ODR's own refusal to entertain and fulfill Zhou's request for a translated transcript in this matter, as well as the Appeals Panel's order, appear to contradict on their face the express voluntary policy obligations set forth in ODR's Manual. *See* Sections 804(A) and 806 of the ODR Manual, excerpted at the District's brief at 26–27.