J-A10016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LAN TU TRINH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KATHLEEN LIEN TRINH AND LT | : | No. 2028 EDA 2019 |
| INTERNATIONAL BEAUTY SCHOOL, | : | |
| INC. | : | |

Appeal from the Order Entered April 29, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 160100581

BEFORE:  BOWES, J., SHOGAN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JUNE 23, 2020**

Lan Tu Trinh (Lan Tu) appeals the April 29, 2019 order of the Court of

Common Pleas of Philadelphia County (trial court) enforcing an August 23,

2017 Consent Order entered between Lan Tu and her sister, Kathleen Lien

Trinh (Kathleen Lien).  Kathleen Lien argues that none of Lan Tu's claims are

properly raised because the Consent Order is not appealable and the claims

are unpreserved.  We affirm.

**I.**

Lan Tu and Kathleen Lien jointly owned the LT International Beauty

School (the Beauty School), a successful venture with two locations in

_____

* Retired Senior Judge assigned to the Superior Court.

Philadelphia. Alleging that her sister had frozen her out of the business and illicitly started a new rival enterprise, Lan Tu filed a complaint and a petition for preliminary injunction raising claims of breach of fiduciary duty, corporate waste, conversion and unjust enrichment. **See generally** Complaint, 1/7/2016, at paragraphs 48-88. She also demanded an equitable buyout, dissolution of the Beauty School and liquidation of all company assets.[1] **See id**.

Kathleen Lien responded with an answer, new matter and counterclaims, as well as a motion for sanctions. Most relevant here is the motion for sanctions in which Kathleen Lien gave explanations and supporting documentation for all the financial transactions discussed in Lan Tu's complaint. **See** Motion for Sanctions, 5/25/2017, at paragraphs, 20-28.

After reviewing the above pleadings, the trial court determined that Lan Tu had failed to raise a genuine issue of material fact as to all claims except for the equitable buyout count. The trial court ruled that since the animosity between the parties eliminated any chance of them resuming joint business operations, the case should be resolved as quickly as possible. **See** Trial Court Opinion, 7/6/2017, at 1-2. To expedite matters, the trial court treated Kathleen Lien's motion for sanctions as a motion for summary judgment,

---

[1] In addition to Kathleen Lien, Lan Tu named the Beauty School as a corporate defendant in her complaint.

which it granted. ***See id.*** at 1-3. All counts except for Lan Tu's equitable buyout claim were dismissed with prejudice or made moot. ***Id***. at 3.

Subsequent to the trial court's dismissal of Lan Tu's claims, at a hearing on August 22, 2017, the sisters reached an agreement for a final settlement, and its terms were put on the record in open court. ***See*** Trial Court Transcript, 8/22/2017, at pp. 44-46. Both sisters were represented by counsel at the hearing. The next day, a Consent Order was executed outlining the terms for the dissolution and the winding down of the Beauty School.

The Consent Order specified the amounts paid into escrow, identified the company real estate to be sold as liquidated corporate assets, and instructed the court-appointed receiver, David Fineman (the Receiver), on how escrow funds would be distributed to cover the business's debts and various fees and costs. ***See generally*** Consent Order, 8/23/2017, at paragraphs 1-11. Each sister was to receive an equal share of the escrow funds after all of the company's winding down expenses were paid. ***See id***. at paragraph 5.

The trial court made the terms of dissolution final but retained jurisdiction for the sole purpose of overseeing the final distribution of escrow funds, at which time the court would order all the claims of all parties in the matter dismissed with prejudice. ***See id***. at paragraph 8. The last paragraph of the Consent Order provides that the "Parties agree that this Consent Order shall not be appealable." ***Id***. at paragraph 11.

Since the Consent Order was entered, Lan Tu has done everything within her power to avoid complying with that agreement. As of the settlement date, about $250,000 remained of company escrow funds for distribution directly to the two sisters. On October 31, 2017, the Receiver offered Lan Tu and her sister each a check for $125,000, but Lan Tu rejected her share, insisting that she had not yet been able to fully review the Receiver's escrow ledgers. Kathleen Lien accepted her check.

The matter dragged on, and for years, Lan Tu refused to resolve the final distribution of escrow assets. She has filed no less than 31 appeals and related lawsuits in state and federal court (including a petition for writ of certiorari to the United States Supreme Court), and so far none of those efforts have afforded Lan Tu any relief. Rather, this activity has done nothing but deplete the escrow funds payable to the sisters.

To avoid yet further depletion of the escrow account, Kathleen Lien filed a "Motion to Distribute Remaining Escrow Proceeds and Discontinue Action," a "Renewed Motion to Distribute Remaining Escrow Proceeds" as well as a motion to hold Lan Tu in contempt for failure to abide by the Consent Order. The Receiver also filed a motion for fees.

At the hearing on the motions, the trial court provided a Vietnamese-English language interpreter. *See* Trial Court Transcript, 4/29/2019, at p. 3. Moreover, Lan Tu was given a copy of the Receiver's escrow ledger to review. *Id*. at p. 9. The Court reviewed the transcripts of relevant prior

hearings, such as the hearing on December 4, 2017, where such documentation was made available to Lan Tu and she declined to review it. *Id*. at p. 11.[2]  The parties then discussed the escrow funds that were owed to Lan Tu, Kathleen Lien, the Beauty School's creditors, and the Receiver.  *Id*. at pp. 15-26.  Throughout the proceedings, Lan Tu maintained that she had been treated unfairly, but at all relevant times she was represented by counsel.

At the conclusion of the hearing, the trial court found that the years of Lan Tu's fruitless litigation was "nothing short of pure insanity" and that it would be best for all parties "to stop this immediately."  *Id*. at p. 31.  Accordingly, the trial court ruled that the dissolution proceedings would end, with the bulk of the remaining escrow funds available to the sisters – about $76,000 – going to Kathleen Lien.  *Id*. at pp. 32-33.

Although the Consent Order had contemplated an equal split of remaining escrow funds between the sisters, the trial court emphasized that Lan Tu had opposed the dissolution proceedings in violation of the Consent

---

[2] For reasons that are not apparent, Lan Tu believed that the Receiver miscomputed the final escrow balances.  Lan Tu has also requested copies of unavailable cancelled checks pertaining to the sale of the two corporate properties, but she has not availed herself of many opportunities to review the Receiver's documentation.  *See* Trial Court Transcript, 4/29/2019, at pp. 29-31.

Order, draining the escrow account of funds.[3]  This justified a greater share of the remaining money going to Kathleen Lien, with Lan Tu's share reduced accordingly.  The trial court then entered the order on review, which stated in its entirety as follows:

> 1.    Receiver S. David Fineman, Esquire ("**Receiver**") shall make a final distribution from the funds currently held in escrow (the "**Escrowed Funds**") to Lan [Tu] in the amount of $6,591.43;
>
> 2.    Receiver shall make a final distribution from the Escrowed Funds to Kathleen [Lien] in the amount of $70,000.00;
>
> 3.    [Deleted in original].
>
> 4.    Receiver shall disburse $6,000.00 to [creditors] as final payment for the . . . Audit of [the Beauty School];
>
> 5.    In the event of receipt by the Receiver of additional funds … said funds shall be distributed to Kathleen [Lien] after accounting for any additional fees of the Receiver; and
>
> 6.    This case is **DISMISSED WITH PREJUDICE**.

Order, 4/29/2019, at paragraphs 1-6.[4]

Lan Tu timely appealed, contending that the trial court erred by:

---

[3] At an earlier hearing, the trial court noted that Lan Tu's "spiteful litigation" had needlessly depleted the escrow account.  **See** Trial Court Transcript, 8/22/2017, at pp. 23-24.  The trial court, the Receiver, and counsel for both parties all agreed that the costs resulting from Lan Tu's litigiousness should be paid out of her share of the escrow money.

[4] On the same date, the trial court entered an order granting the Receiver's motion for fees, entitling the Receiver to $7,332.42 from the escrow account, as well as a retainer of $5,000 in the event that further services would be needed in the future.  **See** Trial Court Transcript, 4/29/2019, at pp. 12-13.

1.      depriving her the benefit of a Vietnamese-English language interpreter;

2.      treating Kathleen Lien's motion for sanctions as a motion for summary judgment and depriving Lan Tu of the ability to contest the entry of summary judgment;

3.      denying Lan Tu a chance to review evidence corroborating the Receiver's ledgers prior to ordering the distribution of escrow funds; and

4.      permitting Lan Tu's personal assets to be used to satisfy the costs of winding down the Beauty School and distributing most of the remaining funds to Kathleen Lien.

Appellant's Brief, at 5-6 (rephrased and renumbered).[5]

## II.

## A.

While we can discern the general issues Lan Tu now raises, the lack of clarity in her appellate brief makes it difficult to identify the precise basis for her appeal, as well as the nature of the remedy she seeks.  Further hindering our review and in violation of the rules of appellate procedure, the Reproduced Record has no index or pagination.  *See* Pa.R.A.P. 2173-2174.

"An appellate brief must provide citations to the record and to any relevant supporting authority."  *See Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006).  This Court "will not become the counsel for an appellant, and will not, therefore, consider issues" unless they are "fully

_____

[5] The trial court filed a 1925(a) opinion, and it appears that Lan Tu was never ordered to file a 1925(b) statement of issues complained of on appeal.

developed in h[er] brief." ***Commonwealth v. Drake***, 681 A.2d 1357, 1360 (Pa. Super. 1996) (citations omitted). "[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007); ***see also*** Pa.R.A.P. 2101 (permitting appeal to be dismissed or quashed if briefing does not conform to court rules).

Despite the above-mentioned deficiencies, we will attempt to address Lan Tu's arguments and demonstrate why no relief is due. Ostensibly, Lan Tu appeals from the order of April 29, 2019, in which the trial court made the final distributions of corporate assets and dismissed the case with prejudice. The confusion here arises because the trial court acted in accordance with the Consent Order of August 23, 2017, in which Lan Tu settled her case with Kathleen Lien and agreed to drop all of her claims and cooperate in the dissolution of the Beauty School. Most, if not all, of Lan Tu's present claims are foreclosed by that settlement agreement.[6]

In Lan Tu's first issue, she argues that the trial court erred in denying her a Vietnamese-English language interpreter. She claims that she suffered

---

[6] Since the Consent Order is contractual in nature, the principles of contract construction apply. ***See generally Lower Frederick Twp. v. Clemmer***, 543 A.2d 502, 510 (Pa. 1988). A court cannot modify or vary the terms of a consent order unless it was entered due to fraud, mistake or accident. ***See id***. A court may only give effect to the agreement by considering its purpose and the parties' intent. ***Id.*** (citing ***Mather Estate***, 189 A.2d 586, 589 (Pa. 1963)).

prejudice from this error at hearings held on April 18, 2017, July 10, 2017, and August 22, 2017. **See** Appellant's Brief, at pp. 14-16. These hearings largely concerned the auction and sale of the Beauty School's two properties as well as the terms of the Consent Order, which was entered after the above hearings took place.

On all of those dates, however, Lan Tu was represented by counsel and at no time did she complain of a language barrier or request an interpreter. Nowhere in Lan Tu's appellate brief did she cite to specific parts of the record that demonstrate why the absence of an interpreter could possibly call into question the validity of the Consent Order or the order she now appeals.[7]

Moreover, Lan Tu never sought to vacate the Consent Order in the trial court, precluding this Court from modifying or abrogating that settlement agreement on appeal. **See Sarsfield v. Sarsfield**, 380 A.2d 899, 900-01 (Pa. Super. 1977) ("Any move to modify or abrogate the consent order must be initiated in the court below"). The Consent Order remains in force, and since it is, by its terms, not appealable, Lan Tu is bound by it. **See** Consent Order, 8/23/2017, at paragraph 11. Accordingly, because Lan Tu did not preserve a challenge to the Consent Order in the trial court, the issue cannot

---

[7] At oral argument, counsel for Kathleen Lien stated that at all the hearings, Lan Tu either had an interpreter or was represented by counsel. The lack of pagination and an index for the reproduced record compounded this Court's difficulty in reviewing the record to confirm counsel's assertion.

be considered at this juncture. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if we could consider the merits of Lan Tu's argument that she was erroneously denied an interpreter on April 18, 2017, July 10, 2017, and August 22, 2017, it would not entitle Lan Tu to any relief. Section 4412(a) of the Judicial Code requires the appointment of an interpreter "if the presiding judicial officer determines that a principal party in interest . . . has a limited ability to speak or understand English." 42 Pa.C.S. § 4412(a). The appointment of an interpreter is within the trial court's discretion. *See Commonwealth v. Pana*, 364 A.2d 895, 898 (Pa. 1976).

In this case, there appears to be no record evidence that the order on review was compromised by the trial court's failure to appoint an interpreter *sua sponte*. The record does not support Lan Tu's apparent claim that the trial court abused its discretion by proceeding without an interpreter, especially since one was never requested on the relevant dates.

Lan Tu has likewise waived her second ground on appeal that the trial court erred in granting summary judgment for Kathleen Lien, *sua sponte*, on July 6, 2017. Even if the trial court erred in entering summary judgment on these facts, the error was twice waived – Lan Tu did not contemporaneously object that summary judgment was improper and she subsequently settled the case, agreeing not to appeal. *See* Trial Court Transcript, 7/10/2017, at

p. 5; Consent Order, 8/23/2017, at paragraph 11. Like the interpreter claim, the summary judgment issue is a non-starter.

**B.**

In Lan Tu's third and fourth appellate issues, she challenges the distribution of escrow assets.[8] She asserts that the Receiver's accounting was somehow flawed because she was not given adequate access to the financial documents used to determine the final apportionments, and she claims that her personal assets were improperly liquidated and put into escrow to pay off corporate debt. Both claims are either waived or without merit.

The record establishes that Lan Tu was given access to the Receiver's accounting ledger several times in advance of the April 29, 2019 order allocating the remaining escrow funds. Her own counsel reviewed and approved the Receiver's figures, which were incorporated into the order Lan Tu now appeals. On multiple occasions, Lan Tu personally requested corroborating evidence of the accounting and the trial court accommodated her.

---

[8] By settling the case with her sister, Lan Tu did not prospectively agree to the amounts that were ultimately distributed in the April 29, 2019 order. Rather, the Consent Order allowed the trial court to retain jurisdiction to oversee the winding down of the business, the liquidation of corporate assets, payments to corporate creditors, and finally the reimbursement of remaining escrow funds to Lan Tu and Kathleen Lien. Thus, Lan Tu retained the right to appeal the final distributions.

Some of the paperwork Lan Tu requested, namely, copies of cancelled checks pertaining to the sale of the Beauty School's two properties, were unavailable. However, Lan Tu has never been able to articulate why the absence of such documentation would call into question the accuracy or veracity of the Receiver's accounting. In light of that fact, Lan Tu's challenge is both waived and insufficiently developed for this Court to determine that the trial court erred in entering the subject order based on the Receiver's figures.

As for the sale of the Beauty School's two properties, Lan Tu has affirmatively waived and failed to preserve a challenge as to how the proceeds were distributed. She has admitted that she owned the two subject properties jointly with her sister, and that the properties were used in the Beauty School's business operations. Lan Tu herself sought the liquidation of all corporate property in the first count of her complaint, including the subject real estate. She agreed to an auction of the property and then participated in the sale.[9] The Consent Order (which Lan Tu never sought to vacate in the trial court)

_____

[9] Lan Tu argues in her brief that the trial court "forced" her to sell her share in the Beauty School real estate. *See* Appellant's Brief, at pp. 21-22. This is a mischaracterization of the record. Lan Tu sought to liquidate those assets and agreed to their sale at a settlement conference held on March 20, 2017. *See* Trial Court Transcript, 7/10/2017, at pp. 10-14; *see also* Trial Court Transcript, 4/18/2017, at pp. 12-14. It was only after Lan Tu attempted to renege that the trial court enforced the property settlement agreement by ordering her to authorize the sale.

provides that the proceeds of those sales would go into an escrow account and be managed by the Receiver.

While she now argues that she received far less of the escrow money than she was entitled to, the trial court distributed those funds in accordance with the binding Consent Order, which provided for the distribution of that money to the sisters once all their corporate debts were satisfied. Lan Tu's intransigence and needless waste of escrow funds through years of fruitless litigation justified the trial court's decision to allocate the lion's share of what remained to Kathleen Lien. Thus, as discussed above, the trial court distributed the escrowed funds as required by the Consent Order, and the terms of that agreement preclude this Court from disturbing the April 29, 2019 order now on review.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2020

- 13 -