**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 74 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 1811 EDA 2016 dated |
| | : | March 23, 2018, reconsideration |
| v. | : | denied May 30, 2018, Affirming the |
| | : | PCRA Order of the Bucks County |
| | : | Court of Common Pleas, Criminal |
| MIGUEL DIAZ, | : | Division, at No. CP-09-0006973-2007 |
| | : | dated May 12, 2016 |
| Appellee | : | |
| | : | SUBMITTED:  March 26, 2019 |

**OPINION**

**JUSTICE DONOHUE**                    **DECIDED:  March 26, 2020**

In this discretionary appeal, the Commonwealth challenges the Superior Court's

application of *United States v. Cronic*, 466 U.S. 648 (1984), to find that trial counsel's

failure to secure a Spanish language interpreter for Miguel Diaz ("Diaz") on the first day

of his criminal trial constituted per se prejudice as Diaz was not a native English speaker

and could not fully understand the proceedings.[1]  We conclude that where the absence

---

[1] As discussed in greater detail infra, the United States Supreme Court and this Court have held that a claim of ineffective assistance of counsel generally requires a defendant to plead and prove that (1) the claim of ineffectiveness has arguable merit; (2) counsel has no reasonable strategic basis for the action or inaction designed to further the interests of the defendant; and (3) the defendant was prejudiced such that there is a reasonable probability that but for counsel's action or inaction, the outcome of the proceedings would have been different.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).  In *Cronic*, the high Court

of a needed interpreter at a critical stage of trial obstructs his ability to communicate with counsel, *Cronic* applies such that the defendant need not prove that he or she was prejudiced by a Sixth Amendment violation. Based on the record and the standard by which we review this case, we find that the Superior Court correctly concluded that *Cronic* was applicable and that no specific showing of prejudice was required because of the absence of an interpreter on the first day of trial during critical stages of the proceeding.

This case arises from the grant of collateral relief by the common pleas court pursuant to Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 ("PCRA"). The pertinent facts, as found by the PCRA court and viewed in the light most favorable to Diaz, are as follows.[2] Diaz is a native of Guatemala who had only a single year of formal education (first grade). He left Guatemala in 1974 and came to the United States by way of Mexico, ultimately obtaining a green card. He worked first in a bakery alongside exclusively Spanish-speaking workers for fourteen years, and then at a paper company, where he continued to work at the time of his arrest. He learned to speak English well enough to communicate with his English-speaking children and stepchildren, to help translate for his Spanish-speaking coworkers at the paper company, and to

---

recognized that "[t]here are … circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," and that in such circumstances, there is a presumption of prejudice. *Cronic*, 466 U.S. at 658.

[2] When reviewing PCRA decisions, we are bound by the findings of fact and credibility determinations made by the PCRA court that have record support; we review its legal conclusions de novo. *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019). In determining whether the record supports the PCRA court's findings, we consider the evidence of record in the light most favorable to the winner before that court. *Id.*

understand basic orders at work. While at the paper company, he was able to file a written grievance in English using a dictionary to help him.

The Commonwealth charged Diaz in 2007 with rape, rape of a child, endangering the welfare of children, statutory sexual assault, indecent assault, corruption of minors, and conspiracy.[3] The charges stemmed from allegations by the daughter of Diaz' live-in paramour[4] that he forced her to have sex with him on multiple occasions from 2002 through 2006, when the child was between the ages of ten and fourteen years old.[5] Diaz retained then-Attorney Gregory Noonan of the former law firm Walfish & Noonan LLC to represent him.[6] Noonan represented Diaz at the preliminary hearing and conducted the pretrial investigation, but his law partner, Attorney John Walfish, represented Diaz at trial and through the first round of post-trial motions.[7]

---

[3] 18 Pa.C.S. § 3121(a)(6), *as amended* § 3121(c), 3122.1(a), 3126(a)(7), (8), 4304(a)(1), 6301(a)(1)(ii), 903(a)(1).

[4] Although never married, Diaz testified that he considered his paramour to be his wife. The record further reflects that the child in question believed that Diaz was her biological father until at or near the time she reported the abuse in 2006. *See* N.T., 2/19/2008 (Volume I), at 48-49.

[5] The Commonwealth also charged the child's mother as a conspirator based on the child's allegations that her mother was complicit in the rapes, at times hitting or punishing her if she refused Diaz' sexual advances. The Commonwealth nol prossed the charges against the mother, however, as the child refused to testify against her.

[6] The record reflects that Noonan voluntarily resigned his law license in 2014 amid investigation into allegations of his misconduct, which included misappropriation of client funds and engaging in the sale of drugs. *See* Pa.R.D.E. 215.

[7] Inexplicably, neither attorney appeared for Diaz' arraignment and the record reflects that the trial court appointed counsel to represent Diaz at that proceeding. Attorney Walfish did not enter his appearance on the record until December 3, 2007. PCRA Court Opinion, 5/12/2016, at 15 ¶ 13-14 (record citations omitted).

Noonan met with Diaz on a handful of occasions in the eight months between Diaz' arrest and trial, spending less than an hour with him in total, and never prepared him for trial. He spoke Spanish with Diaz during their first and longest visit, and then communicated with him in English thereafter. Attorney Walfish met Diaz for the first time at the courthouse on February 19, 2008, the first day of trial. The case had been continued several times, including most recently on January 14, 2008, at which listing Attorney Walfish failed to appear, and February 19 was listed as a "must try" date. N.T., 3/31/2016, at 6. During their meeting, Diaz asked Attorney Walfish to request a Spanish language interpreter. Diaz made this request based on his experience at the preliminary hearing, which occurred without the aid of an interpreter, which he testified made him realize that he needed one for trial. N.T., 11/13/2012, at 114.

Attorney Walfish conveyed Diaz' request to the trial court immediately prior to argument on pretrial motions. The trial court judge advised Attorney Walfish that no interpreter was available and queried why this issue was arising on the day of trial. Attorney Walfish consulted with Diaz, informing him "that it wasn't up to him to stop the court, that he couldn't do that." *Id.* at 126. Attorney Walfish then changed the request, informing the trial court that Diaz only needed an interpreter for his own testimony: "Your honor, Mr. Diaz explains to me that the reason he would request an interpreter is that up until this point in time, he has never been required to testify himself in a court of law, and that is why he would feel more comfortable in addressing the [c]ourt and the jury with an interpreter present." N.T., 2/19/2008 (Volume I), at 7. Presuming, on that basis, that Diaz "generally speaking … has felt he's understood what's been taking place," and believing that no testimony would be taken that day, the trial court allowed the proceeding to begin,

stating that a Spanish language interpreter would be available the following day if Diaz needed one. *Id.* Attorney Walfish responded: "Your Honor, we would be comfortable in proceeding without an interpreter until such time as Mr. Diaz is prepared to testify, at which time we would need an interpreter."[8] *Id.* at 8. Despite Attorney Walfish's

---

[8] Rather than address the merits of the substantive issues presented in this appeal, the two dissenting opinions appear to advance a waiver theory (one that even the Commonwealth declined to pursue), contending that Attorney Walfish accepted the trial court's offer to proceed without an interpreter until the second day of trial because Diaz had advised him that he only needed an interpreter during his own testimony. This waiver theory, however, is based solely on the ungrounded speculation of the dissenting justices. During the subsequent PCRA proceedings, Diaz During the subsequent PCRA proceedings, Diaz effectively denied advising his counsel that he only required an interpreter during his own testimony, or otherwise agreeing that he did not require an interpreter on the first day of trial. The PCRA court read to Diaz the exchange between Attorney Walfish and the trial court conveyed hereinabove and asked him whether he remembered it, to which Diaz responded that he did. N.T., 11/13/2012, at 125-26. The PCRA court then asked Diaz: "Was that accurate? Were you trying to help the court and was your lawyer talking to you and working out an agreement that you would get an interpreter the next day?" *Id.* at 126. Diaz responded as follows: "Well, the lawyer told me that it wasn't up to him to stop the court, that he couldn't do that. The rest, I didn't understand." *Id.* The PCRA court made no finding of fact inconsistent with Diaz' testimony, including no finding of fact regarding what Diaz told Attorney Walfish before the final exchange between counsel and the trial judge:

> 73. Defense counsel then spoke to his client, and told Judge Heckler that his client only needed the interpreter for when he testified, whereupon Judge Heckler stated that here would not be any testimony that day, and expressed reticence at delaying the proceedings further to obtain an interpreter. (N.T. 2/19/08, p. 7).

PCRA Court Opinion, 5/12/2016, at 34.

Relatedly, the Commonwealth contends that Diaz admitted "under oath," both at trial and at the hearing on his post-sentence motions, that he only asked for an interpreter to aid him during his testimony. Commonwealth's Brief at 28, 41. Diaz denies this in his brief. To support this claim, the Commonwealth cites to two pages of testimony. *See id.* at 41. The first is a passage from Diaz' direct examination at trial, wherein Diaz acknowledged that he spoke "a little English," but stated, "if I speak in English I would get confused and I would like to state clear what I'm going to say." N.T., 2/20/2008, at 72. The second citation is to the post-sentence motion hearing and reflects that the prosecutor asked Diaz

assurances to the court that Diaz only needed an interpreter for his own testimony, he reported to Noonan that day, "we got a PCRA looking at us in the face, let's get an interpreter." N.T., 3/30/2015, at 285.

The first day of trial, during which Diaz did not have an interpreter, included argument on pretrial motions, jury selection, opening statements and, contrary to the trial court's prediction, direct and cross-examination of the child victim. Prior to the commencement of the second day of the proceedings, Attorney Walfish informed the trial court that Diaz had been "uncomfortable with his understanding how the proceedings were transpiring" and that Diaz required simultaneous interpretation for the rest of the trial. N.T., 2/20/2008, at 3-4. The trial court provided Diaz with an interpreter for the remainder of the proceedings before it.

The jury convicted Diaz of all charges on February 21, 2008. The trial court convened a hearing on May 23, 2008 for sentencing and for the determination of whether

---

if he "remember[ed] being asked by the district attorney that the reason you had a translator for trial is to make sure that everything you say is conveyed to the jury?" to which Diaz responded, "I don't remember." N.T., 11/13/2012, at 172. Neither passage supports the proposition for which the Commonwealth presents it. The first does not constitute an admission that Diaz did not otherwise need an interpreter to understand the rest of the proceeding; it only states that he unquestionably needed one for his own testimony. The latter says nothing at all other than that Diaz did not recall the question being asked at trial. We therefore disagree with the Commonwealth's assertion that "this is a case where [Diaz] admitted, under oath, that he requested an interpreter on the first day of trial for his testimony only[.]" Commonwealth's Brief at 28.

In a footnote in her Dissent, Justice Mundy cites to Diaz' affirmative response to the following question by the prosecutor: "You have a translator here today because you're testifying to make sure everything you say is conveyed to the jury, correct?" Dissenting Op. at 7 n.3 (citing N.T., 2/20/2008, at 86-87). Justice Mundy contends that this testimony demonstrates that Diaz consented not to have an interpreter for the first day of trial. *Id.* Again, however, this testimony at most reflects Diaz' belief that he needed an interpreter for his testimony. It is not an admission that he did not need an interpreter for the entirety of the proceedings.

Diaz was a sexually violent predator ("SVP").  An interpreter was present at the SVP and sentencing hearing to assist Diaz, and the trial court made a finding that Diaz could not participate in the proceedings without the aid of an interpreter.  N.T., 5/23/2008, at 3. Following the hearing, the court found that Diaz was an SVP.  It sentenced him to an aggregate term of twenty to forty years of incarceration and ordered him to comply with the restrictions of the then-applicable law pertaining to sex offenders and SVPs.

On May 30, 2008, Attorney Walfish filed post-sentence motions as well as a motion to withdraw as counsel.  While both motions were pending, Diaz filed a pro se notice of appeal on June 18, 2008, along with motions for transcripts.  Although the trial court on June 19, 2008 ordered the Commonwealth to respond to counsel's motions, it subsequently found that Diaz' pro se appeal precluded it from ruling upon the post-sentence motions and instead ordered Attorney Walfish to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Thereafter, at Attorney Walfish's urging, the trial court appointed new counsel to represent Diaz on direct appeal and granted Attorney Walfish's request to withdraw.  New counsel raised one issue on appeal claiming ineffective assistance of trial counsel.  On July 29, 2009, the Superior Court dismissed the appeal without prejudice, finding that the claim was not properly before it on direct appeal.

On October 22, 2009, Diaz filed a pro se PCRA petition.  The PCRA court ultimately appointed current counsel, Attorney Stuart Wilder.  Attorney Wilder filed an amended PCRA petition raising numerous claims of ineffective assistance of counsel.  On June 18, 2012, by agreement of the parties, the trial court granted Diaz' request for PCRA relief and reinstated his post-sentence motions and direct appeal rights nunc pro tunc.

Attorney Wilder filed post-sentence motions on June 22, 2012 seeking reconsideration of Diaz' sentence and a new trial. He based the latter request on the failure of the trial court to provide an interpreter for Diaz on the first day of trial. The court held a hearing on the motion that spanned several days, but denied relief on November 16, 2012. Of relevance to the pending matter, the court found – based on the exchange that took place between the trial court judge and Attorney Walfish – that Attorney Walfish did not in fact request the presence of an interpreter on the first day of trial, and thus the trial court did not err by failing to provide one. Instead, the post-sentence motions court found that Attorney Walfish had asked for an interpreter only for Diaz' testimony.

Diaz appealed to the Superior Court, which affirmed in a non-precedential decision on October 1, 2013, finding that because Attorney Walfish failed to object to the trial court's failure to provide an interpreter on the first day of trial, Diaz had waived the claim. Judge Shogan authored a concurring statement, joining the majority in full and emphasizing that the decision did not prejudice Diaz' right to raise a claim of trial counsel's ineffectiveness on collateral review. This Court denied allowance of appeal on March 11, 2014.

Attorney Wilder filed the PCRA petition at issue in this appeal on September 30, 2014 raising, inter alia, ten claims of ineffective assistance of trial counsel, including:

- failing to obtain an interpreter for Diaz prior to trial, which constituted a violation of his right to the assistance of counsel and to understand the proceedings so that he could consult with counsel about the substance of the proceedings;

- allowing the first day of trial to proceed without an interpreter for Diaz;

- failing to object to the denial of an interpreter on the first day of trial;

- failing to obtain Diaz' work records for an alibi defense;

- failing to meet with Diaz prior to trial or properly prepare him for trial;

- failing to correct errors in Diaz' presentence investigation report;

- failing to question any witnesses concerning the child's refusal to testify against her mother;

- failing to obtain the Bucks County Children and Youth Services file prior to trial;

- failing to secure an interpreter for Diaz' meeting with the Sexual Offender Assessment Board; and

- failing to meet with Diaz between trial and sentencing, prepare Diaz for sentencing, and review/correct errors in the Sexual Offender Assessment Board's report.

The Commonwealth filed an answer denying that Diaz was entitled to relief on any of his claims.

The PCRA court held three hearings spanning four months. The record reflects that there was conflicting evidence presented at the PCRA hearing concerning Diaz' ability to communicate in, and his level of comprehension of, the English language on a day-to-day basis.[9] Testimony from Diaz' supervisor at work, the probation officer who prepared Diaz' presentence investigation report, the detective that interviewed Diaz, and Diaz' trial counsel established that he spoke and understood English well enough to communicate with them and that he did not exhibit any confusion or express a need for an interpreter during their interactions. The Commonwealth also admitted recorded calls from prison that reflected Diaz communicating, in part, in English. Testimony from Diaz and his adult daughters, on the other hand, revealed that although he spoke and

---

[9] The evidence presented at the PCRA hearings included new testimony and exhibits provided by various witnesses as well as the testimony and exhibits from the 2012 hearings on Diaz' post-sentence motions, which the PCRA court incorporated into the PCRA record by agreement of the parties. *See* N.T., 3/30/2015, at 8.

understood some English, it was very limited, with his daughters testifying that they avoided using big words with Diaz and had to translate for him when they went shopping with him. Further, Diaz testified that on the first day of trial, he did not understand anything that occurred during pretrial motions, jury selection or opening statements, and that he understood only "about half" of the victim's testimony. N.T., 11/13/2012, at 132. He also testified that if an interpreter had been present on the first day of trial, "I would have had communication with my lawyer about my case." N.T., 11/13/2012, at 138.

Diaz also presented testimony from Raymond J. McConnie, a Spanish/English language interpreter with training in psycholinguistics and social linguistics, whom the PCRA court accepted as an expert concerning Diaz' ability to comprehend English. After interviewing Diaz and reviewing documents, exhibits and the notes of testimony relevant to the case, McConnie testified to his opinion, within a reasonable degree of professional certainty, that Diaz would have had significant difficulty understanding the first day of trial. N.T., 11/15/2012, at 46, 48, 52. He further testified that although Diaz could speak to trial counsel in English to some degree, his ability to communicate with counsel on the first day of trial was likely "not significant." *Id.* at 49.

According to McConnie, this is the result of Diaz' lack of formal education and the stress of a trial, and that in his professional experience, for those "who have a peripheral understanding of the English language …, that stress factor tends to dissipate their ability to understand, comprehend what is actually going on [at trial]." *Id.* at 48. McConnie agreed that Diaz was "conversant in English on matters of everyday life," but stated that without an interpreter, Diaz could not understand the legal proceedings on the first day of trial. *Id.* at 73, 79. While Diaz could communicate with his children and in telephone

conversations in English, this was because these are "at a fairly familiar level consonant with their education and abilities to communicate in English and Spanish." *Id.* at 52. McConnie contrasted this with "the register at trial," which he described as "pretty high and … technical." *Id.* McConnie referred to Diaz' understanding of English as "reflexive," which he explained as follows: "He lives in the United States; he knows English is the language of the land. He is conversant in English to whatever extent he might be. … [O]nce those limits are superseded, he blanks out and he doesn't know what's happening." *Id.* at 86.

On May 12, 2016, the PCRA court entered an order granting Diaz relief in the form of a new trial. It found that "there is undoubtedly merit in [the] contention that trial counsel was ineffective for failing to secure an interpreter, if, for no other reason, than trial counsel was unaware of the need for an interpreter until the day of trial" and that Attorney Walfish had no reasonable basis for this failure. PCRA Court Opinion, 5/12/2016, at 40-41. It concluded, however, that Diaz was not entitled to relief based solely on this claim, but that this failing was "part and parcel of the overarching argument that trial counsel's multiple failings demonstrate his unacceptable lack of preparedness for trial."[10] *Id.* at 40. The court found Diaz and his family members who testified to be credible and the testimony by Noonan and Attorney Walfish to be "nothing but justification, and for the most part poor justification, lacking credibility." *Id.* at 41.

---

[10] For these reasons, we disagree with the Justice Mundy's contention in dissent that the Superior Court lacked jurisdiction to adjudicate this issue because the PCRA court did not grant Diaz relief on his claim that counsel was ineffective for failing to procure an interpreter at trial. Dissenting Op. (Mundy) at 1-3. The PCRA court granted Diaz a new trial based upon its findings of multiple instances of ineffectiveness of counsel, one of which was, unquestionably, the failure to obtain an interpreter for the first day of trial.

Applying the standard for ineffective assistance of counsel first announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by this Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987), the PCRA court concluded that Diaz was entitled to a new trial. *See supra*, note 1. It found that trial counsel "simply failed in their duties as attorneys to provide adequate representation as mandated by both the United States Constitution and the Pennsylvania Constitution" in violation of Diaz' "right to a fair trial." PCRA Court Opinion, 5/12/2016, at 41-42. In an opinion issued in response to the Commonwealth's concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the PCRA court further expounded on the basis for its decision:

> [Diaz'] trial counsels' multitude of deficiencies ranged from things that might be characterized as inattentive or negligent to things that were breathtakingly shocking. There was no reason for the [c]ourt to find ineffectiveness of counsel for any one of the facts, considering the volume of deficiencies proven through documents and trial counsel's testimony. The combination of facts proven establish that the incompetence and omission of counsel was probabilistically certain to have affected the outcome of the trial which turned on oath against oath between a young woman and a man whose testimony was presented through an interpreter. The undersigned found as a fact that had there been minimal trial preparation, one or more members of [Diaz'] family would have been ready, willing and able to provide testimony and support.
>
> \* \* \*
>
> The decision to grant [Diaz] a new trial was not made lightly. Quite frankly, the system failed both the [c]omplainant, E.S. and [Diaz]. In 33 years of practice before the [b]ar, and 6 years of experience as a [j]udge, I have never seen a case as rife with ineffective assistance of counsel[] as this one.

PCRA Court Opinion, 7/21/2016, at 11, 20. The PCRA court did not make a finding, as required by *Strickland*, that Diaz suffered prejudice such that there is a reasonable

probability that there would have been a different outcome at trial but for counsel's failings or that counsel's failings caused a breakdown in the adversarial process rendering the result of the trial unreliable.  *See Strickland*, 466 U.S. at 689, 696; *infra*, p. 20.

The Commonwealth appealed this decision to the Superior Court, which affirmed based exclusively on counsel's failure to secure an interpreter (or object to the absence of one) on the first day of trial.  Relying on the findings of fact made by the PCRA court, the Superior Court majority observed that Diaz was unable to understand English to a degree that he could adequately participate in his defense.  Likening Diaz' situation to a defendant who was absent from the proceeding on the advice of his lawyer, the majority found that this implicated his right to confront witnesses and be present at his trial. *Commonwealth v. Diaz*, 183 A.3d 417, 423 (Pa. Super. 2018).  In so finding, the Superior Court majority relied on this Court's prior decision in *Commonwealth v. Pana*, 364 A.2d 895 (Pa. 1976), and its own precedent, *Commonwealth v. Tolbert*, 369 A.2d 791 (Pa. Super. 1977).

In *Pana*, this Court reviewed a trial court's decision to prohibit a defendant from using an interpreter during his testimony.  The trial court appointed an interpreter for the defendant, a native of Puerto Rico, but denied the defendant's request to testify in Spanish, only allowing the interpreter to aid the defendant with his English testimony. Although the defendant spoke and understood English, having lived in the United States for ten years, he had difficulty answering and understanding various questions posed to him on direct and cross-examination.

We found that "[a] defendant's ability to use an interpreter encompasses numerous fundamental rights. The failure to understand the proceedings may deny him his right to

confront witnesses against him, his right to consult with his attorney, or his right to be present at his own trial," as well as the right to testify in his own defense. *Pana*, 364 A.2d at 898 (citations omitted). We further recognized that the decision of whether to appoint an interpreter is within the discretion of the trial court. As the trial court had exercised its discretion by determining that the defendant was in need of an interpreter, we concluded that its refusal to allow the defendant to use the interpreter during his testimony "serve[d] no purpose" and constituted "prejudicial error." *Id.*

*Tolbert* involved a defendant who was not present on the first day of trial because trial counsel had believed the prosecution would be requesting a continuance and instructed him not to appear on that basis. Trial counsel initially objected to proceeding in the absence of his client, but in an attempt to appease the now-irritated trial judge, offered to go forward with jury selection without the defendant. On direct appeal, the defendant raised a claim of trial counsel's ineffectiveness for waiving his presence during voir dire.[11] The Superior Court found that the defendant had a clear right to be present and that it was error for trial counsel to agree that jury selection could occur in his client's absence. It thus found that counsel had provided ineffective assistance by failing to ensure his client's presence during jury selection, reversed the judgment of sentence and remanded the matter for a new trial. *Tolbert*, 369 A.2d at 792.

The Superior Court majority below acknowledged the distinction between *Strickland* and *Cronic* ineffectiveness and concluded that *Cronic* was applicable here. *See supra*, note 1. It found that the ability of a defendant to understand the proceedings

---

[11] *Tolbert* predated our decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), wherein we held that a petitioner must generally wait to raise claims of ineffective assistance of counsel until collateral review. *Id.* at 738.

against him was "fundamental to the right to confront witnesses and be present at his own trial." *Diaz*, 183 A.3d at 423. Further, it found that the record supported the PCRA court's finding that Diaz was unable to understand English to a degree that allowed him to adequately participate in the proceedings without an interpreter. The majority thus held that where "counsel fails to ascertain the defendant's need for a translator and as a result, incorrectly informs the court about the need for a translator," which, in turn, "results in the defendant not comprehending the criminal proceedings and counsel not objecting to the trial court's proceeding without a translator," the defendant is "constructively absent" from trial, which constitutes per se prejudice. *Id.* at 424.

Judge Bowes authored a dissenting opinion, expressing her view that *Strickland*, and not *Cronic*, was applicable pursuant to the facts of the case. In the dissent's view, a finding that a defendant was actually or constructively absent from trial affects only the defendant's ability to assist his or her counsel, not counsel's ability to provide effective assistance, and that the circumstances here fell under none of the enumerated circumstances warranting per se prejudice announced in *Cronic*. *Id.* at 425-26 (Bowes, J., dissenting). The remainder of the dissent was based on the belief that Diaz simply experienced "some difficulty understanding the proceedings" without an interpreter, and not, as the PCRA court found, that he was completely unable to understand the majority of the first day of trial or to communicate with counsel about the trial. *See id.* at 427. In fact, Judge Bowes agreed that the majority's decision "would undoubtedly be correct if [Diaz] was completely unable to understand the proceedings," and "agree[d] that a trial is fundamentally unfair … when the criminal defendant cannot comprehend the proceedings against him due to a language barrier." *Id.* at 432. The dissent went on to assess the

PCRA court's finding that Diaz was entitled to a new trial under *Strickland*. Addressing each of the claims raised, the dissent found that Diaz had failed to satisfy his burden of proof and that he therefore was not entitled to the relief granted. *See id.* at 432-44.

The Commonwealth requested further review by this Court, which we granted to address the following issues as phrased by the Commonwealth:

> 1) As a matter of first impression, did the Superior Court err as a matter of law in holding that counsel's failure to obtain, object to the lack of, or ascertain the need for an interpreter on the first day of trial constitutes per se prejudice under [*Cronic*], rather than applying the [*Strickland*]/[*Pierce*] ineffectiveness standard?

> 2) Did the Superior Court err in applying *Cronic,* instead of the *Strickland/Pierce* ineffectiveness standard, on the claim of counsel's ineffectiveness for failing to obtain or object to the lack of an interpreter on the first day of trial under the circumstances of the instant case, where the record clearly reflected that [Diaz], including by his own admissions, spoke and understood English as a second language, and, where, [Diaz] himself confirmed that on the first day of trial[,] he requested an interpreter only for his own testimony and his request was granted?

*Commonwealth v. Diaz*, 199 A.3d 347 (Pa. 2018) (per curiam).

The Commonwealth asserts that *Cronic*'s presumption of prejudice does not apply to a claim concerning counsel's failure to secure an interpreter for a criminal defendant with limited English proficiency. According to the Commonwealth, *Cronic* is only applicable "when the counsel's failure is complete, while *Strickland* applies when counsel failed at specific points in the proceedings." Commonwealth's Brief at 26 (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002)). The Commonwealth argues that where the absence of an interpreter does not hamper counsel's provision of effective assistance, and the only

possible deleterious effect was on the defendant's ability to fully understand the proceedings, it precludes application of a per se prejudice standard. *Id.* at 26-29.

The Commonwealth further asserts that the Superior Court majority's finding that Diaz was constructively absent on the first day of trial at the fault of counsel was improper, disagreeing that *Pana* or *Tolbert* is applicable or instructive here. The Commonwealth states that the record is replete with instances establishing Diaz' "command of the English language." *Id.* at 36; *see also id.* at 35; *id.* at 38-40 (recounting portions of the record that exhibit Diaz' ability to understand English). It criticizes the Superior Court majority for relying "on an isolated 'finding of fact' by the PCRA court" that Diaz could not understand what was being said during pretrial motions, jury selection and opening statements, and could understand only half of the victim's testimony. *Id.* The Commonwealth contends that this finding by the PCRA court is unsupported by the record, and thus not entitled to deference on review. The Commonwealth further points to the PCRA court's legal conclusion that Diaz was not entitled to relief on his claim concerning counsel's failure to secure an interpreter as further indication of the Superior Court's error. According to the Commonwealth, counsel sufficiently and competently represented Diaz on the first day of trial, rendering *Cronic* inapplicable.

Diaz responds to these contentions, agreeing with the Superior Court majority that the failure to secure an interpreter on the first day of trial was tantamount to his absence from the courtroom. Diaz observes that Pennsylvania law for nearly 200 years has made clear that the denial of the right to be present at trial, for any portion thereof, necessitates the grant of a new trial. Diaz' Brief at 12-13 (citing *Dunn v. Commonwealth*, 6 Pa. 384 (1847); *Prine v. Commonwealth*, 18 Pa. 103, 105 (1851)). Further, relying on *Pana*, he

states that the absence of a needed interpreter implicates a host of constitutional rights, including his right to be present, his right to participate in his defense and his right to consult with counsel. *Id.* at 13-14 (citing *Pana*, 364 A.2d at 898). He asserts that "[t]he right to an interpreter implicates the right to counsel," and that "a defendant's active participation in the defense … is critical." *Id.* at 19-20.

Diaz observes that as a person with limited English proficiency, his right to an interpreter is codified in Pennsylvania law. *Id.* at 24-26; *see* 42 Pa.C.S. §§ 4401-4438. In his view, this further establishes that trial counsel's failure to timely raise Diaz' need for an interpreter and to secure one for him at the beginning of trial deprived him of his right to be involved at critical stages of the trial. He argues that a defendant is empowered to participate in his defense by giving "advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself," and the absence of an interpreter on the first day of trial denied him these rights. Diaz' Brief at 28-29 (quoting *Faretta v. California*, 422 U.S. 806 (1975)). This violation requires no assessment of prejudice, according to Diaz, and warrants the grant of a new trial. *Id.* at 29.

> The right to be present, participate in jury selection, hear the evidence against one, and speak with counsel is basic under the Pennsylvania and United States Constitutions, and their deprivation to the degree presented here is not subject to a test of whether or not the case would ha[ve] resulted in a not guilty verdict had an interpreter been on hand.

*Id.* at 33.

Instead, Diaz contends that counsel's failure to secure an interpreter on the first day of trial was "a complete denial of counsel at not one but several critical stages of the trial." *Id.* at 35. Without an interpreter, Diaz asserts that he was unable to consult with his lawyer on the first day, assist in jury selection and the examination of the complaining

witness or understand opening arguments. *Id.* at 35-36. This, Diaz argues, "undermine[s] confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame." *Id.* at 36 (quoting *Commonwealth v. Reaves*, 923 A.2d 1119, 1128 (Pa. 2007)).

Diaz asserts that the Superior Court's conclusion that he was unable to understand English well enough to participate in the first day of trial without an interpreter finds ample support in the numerous findings of fact made by the PCRA court, which, in turn, have record support. *Id.* at 41, 42-43; *see also id.* at 44-50 (recounting portions of the record that support a finding that Diaz required an interpreter for trial). He argues that the Commonwealth's contention that there are other facts of record that would support a contrary conclusion (i.e., that Diaz understood the proceedings on the first day of trial) simply establishes that there is conflicting record evidence on this point. He reminds us that in such circumstances, we are bound by the findings of fact and credibility determinations made by the PCRA court. Diaz further asserts that while the Superior Court's decision is correct, so too is the PCRA court's finding that the cumulative errors committed by counsel warranted the grant of relief, and that we may affirm the Superior Court on that basis as well. *See id.* at 59-64.

Prior to analyzing the controlling law in this matter, we first examine the pertinent findings of fact made PCRA court relative to Diaz' English language proficiency and his need for an interpreter to understand the proceedings and to communicate with counsel on the first day of trial. The PCRA court recognized that the trial court judge made a determination that Diaz required an interpreter to be able to understand the proceedings

and participate in them. PCRA Court Opinion, 5/12/2016, at 34 ¶ 77. The PCRA court acknowledged the evidence that Diaz spoke and understood English – at work, with his children, and in other aspects of his daily living. It credited the testimony of McConnie and Diaz, however, to find that the extent of the English language Diaz knew and understood was insufficient to allow him to understand what was said, what was going on, or to communicate with trial counsel without an interpreter on the first day of trial. *Id.* at 36-37, 38 ¶¶ 92, 102. Specifically, based on this testimony, it found as fact that Diaz "did not understand what was occurring during the pre-trial motions proceedings, jury selection, or opening arguments, and did not understand about half of the complainant's testimony," and that the absence of an interpreter resulted in Diaz having "significant difficulty … communicating with counsel at trial." *Id.* It did not find, as the dissenting judge below stated, that Diaz only had "some difficulty understanding the proceedings," *see Diaz*, 183 A.3d at 427 (Bowes, J., dissenting), but in fact found that he was unable to understand, at all, the great majority of the proceedings that occurred on the first day of trial.

In total, the PCRA court made thirty-three findings of fact concerning Diaz' ability to understand the English language in support of its conclusion that he was unable to comprehend the proceedings on the first day of trial because of the absence of an interpreter, and our review of the record finds support for each of the pertinent findings. Although there was testimony that may have allowed the PCRA court to conclude that Diaz had a sufficient command of the English language to allow him to understand what was said on the first day of trial, there was also evidence that supported the opposite finding. The PCRA court made its factual findings and credibility determinations, and as

the record evidence supports them, they are binding upon us on appeal. *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019); *see supra*, note 2. The PCRA court's application of *Strickland*, and not *Cronic*, to resolve Diaz' claim concerning the ineffectiveness of trial counsel in his favor, on the other hand, is not binding upon us as we review such a legal conclusion de novo. *Id.*

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution entitle a criminal defendant to the representation of counsel. U.S. Const. amend. VI; Pa. Const. art. I, § 9. Both this Court and the high Court have interpreted the right to counsel as encompassing the right to the effective assistance of counsel. *Garza v. Idaho*, 139 S. Ct. 738, 743 (2019); *Commonwealth v. Rosado*, 150 A.3d 425, 432 (Pa. 2016). As we have held, this is not a "hollow formality" fulfilled by the presence at trial of "a person who happens to be a lawyer"; counsel must provide effective assistance to satisfy this constitutional guarantee. *Rosado*, 150 A.3d at 432.

When reviewing claims of ineffective assistance of counsel, courts must presume that counsel provided effective assistance. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018). To overcome this presumption, the vast majority of cases, decided under *Strickland*, require the defendant to plead and prove that (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for the action or inaction; and (3) the petitioner suffered prejudice as a result. *Id.* Prejudice, in this context, has been repeatedly stated as requiring proof that but for counsel's action or inaction, there was a reasonable probability that the proceeding would have had a different outcome. *Id.* at 150-51 (citing *Strickland*, 466 U.S. at 689). The *Strickland* Court cautioned, however, that it did not intend these principles to be viewed as "mechanical rules":

> Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Strickland*, 466 U.S. at 696.

On the same day that the Court issued its opinion in *Strickland*, the high Court also decided *Cronic*, which recognized an exception to *Strickland*'s general rule requiring proof of prejudice to prevail on a claim of ineffective assistance of counsel. The *Cronic* Court began its analysis by reiterating *Strickland*'s recognition that the constitutional guarantee to effective assistance of counsel exists to ensure that a criminal defendant receives a fair trial. *Cronic*, 466 U.S. at 658. For this reason, and as stated in *Strickland*, a defendant must establish that the challenged conduct resulted in "some effect … on the reliability of the trial process" in order for the Sixth Amendment to be implicated. *Id.*; *Strickland*, 466 U.S. at 686.

The Court observed, however, that there were certain, limited circumstances where prejudice is so likely that the cost of litigating the question of prejudice is unnecessary. *Cronic*, 466 U.S. at 658. Without providing an exhaustive list of scenarios, the *Cronic* Court gave examples of when the presumption of prejudice applies. They included: (1) the actual or constructive denial of counsel at a critical stage of trial; (2) when counsel fails entirely to provide "meaningful adversarial testing" of the prosecution's case; and (3) circumstances wherein no lawyer, regardless of general competency, could have provided effective assistance of counsel. *Cronic*, 466 U.S. at 659 (citing *Davis v. Alaska*,

415 U.S. 308 (1974); *Powell v. Alabama*, 287 U.S. 45 (1932)). As this Court has observed,

> [T]he defining feature of [*Cronic* ineffectiveness] cases is that the acts or omissions of counsel were the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame.

*Commonwealth v. Cousin*, 888 A.2d 710, 718-19 (Pa. 2005).

The Sixth Amendment right to counsel includes the right of the defendant to confer with his attorney about his case, the denial of which constitutes the actual or constructive denial of counsel and triggers the application of *Cronic*'s presumption of prejudice. *Cronic*, 466 U.S. at 659 & n.25 (citing *Geders v. United States*, 425 U.S. 80 (1976)). In *Geders*, the United States Supreme Court granted certiorari to determine whether a trial court's order prohibiting a criminal defendant from consulting with his attorney during an overnight recess of trial constituted a violation of his Sixth Amendment right to counsel. The recess occurred in the middle of the defendant's testimony, and the trial court was concerned that the attorney would attempt to improperly influence the defendant's testimony prior to cross-examination. Although recognizing the value of witness sequestration and the concern of attorney "coaching" during the defendant's testimony, the *Geders* Court found that the defendant's right to consult with counsel about the substance of trial outweighed and overrode these concerns. *Id.* at 90. It observed that there were legitimate, constitutionally protected communications, that would occur during the recess, including discussions about "tactical decisions," trial strategy, witness testimony and lines of inquiry not yet pursued. *Id.* at 88. The Court therefore found that

the trial court's order preventing the defendant from consulting with his attorney during the overnight recess violated his right to counsel guaranteed by the Sixth Amendment. *Id.* at 91. The Court reached this decision without assessing whether the defendant suffered prejudice as a result of the interference with his right to consult with his attorney.

In *Perry v. Leeke*, 488 U.S. 272 (1989), the high Court was again asked to review a trial court's order prohibiting the defendant from consulting with counsel in the midst of his testimony, but this time during a fifteen minute recess. The Court began by acknowledging that *Geders* stands for the proposition that the inability to consult with counsel constitutes a violation of a criminal defendant's Sixth Amendment right to be represented by counsel, constituting "[a]ctual or constructive denial of the assistance of counsel altogether," and for which the defendant need not show prejudice. *Id.* at 279.

The *Perry* Court continued, noting the "thin" but important difference between the circumstances present in *Geders* and the case before it. *Id.* at 280-81. The Court observed that the consultation between attorney and client in *Geders* during an overnight trial break "would encompass matters that go beyond the content of the defendant's own testimony – matters that the defendant does have a constitutional right to discuss with his lawyer." *Id.* at 284. In fact, the Court stated that a defendant has a "right to unrestricted access to his lawyer" to discuss these matters. *Id.* *Perry*, on the other hand, involved a very brief trial recess (15 minutes), and the Court found "there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony." *Id.* at 283-84. Although the defendant has an "absolute right" to consult with his attorney, the Court found that this does not include the right to discuss his testimony while it is in process. *Id.* at 281, 284. "[W]hen [the defendant] assumes the role of a

witness, the rules that general apply to other witnesses – rules that serve the truth-seeking function of the trial – are generally applicable to him as well," including sequestration. *Id.* at 282. As such, the Court concluded "that the Federal Constitution does not compel every trial judge to allow the defendant to consult with his lawyer while his testimony is in progress if the judge decides that there is a good reason to interrupt the trial for a few minutes." *Id.* at 284-85.

Various federal courts have found that a defendant's inability to consult with his counsel during trial constitutes an actual or constructive denial of counsel in violation of the Sixth Amendment under *Cronic*. In *Moore v. Purkett*, 275 F.3d 685 (8th Cir. 2001), for example, the Eighth Circuit Court of Appeals held that an order prohibiting defendant, who had a limited ability to write, from talking quietly with his attorney during trial violated the defendant's right to counsel. The court observed that the Sixth Amendment right to effective counsel "guarantees a defendant the right to confer with counsel in the courtroom about the broad array of unfolding matters, often requiring immediate responses, that are relevant to the defendant's stake in his defense and the outcome of his trial." *Id.* at 688. The *Moore* court held that his inability to consult with counsel during trial constituted an actual or constructive denial of counsel and that *Cronic* therefore applied, requiring the grant of a new trial without a the need for a showing of prejudice. *Id.* at 689 (citing *Perry*, 488 U.S. at 280). *See also, e.g., Hall v. Warden, Lee Arrendale State Prison*, 686 Fed.Appx. 671 (11th Cir. 2017) (per curiam) (testimony of witness through a closed-circuit video feed, where the attorney was in a separate room with the witness and the defendant observed the testimony on a screen but had no ability to communicate with counsel during the testimony violated Sixth Amendment right to

counsel under *Cronic*); *United States v. Miguel*, 111 F.3d 666, 672 (9th Cir. 1997) (recognizing that "[t]he Sixth Amendment guarantees a defendant the right to confer with counsel during trial," but finding, under the specific facts of the case, that right was not violated); *Gonzalez v. Phillips*, 195 F.Supp.2d 893, 902 (E.D. Mich. 2001) (the absence of a needed interpreter, which deprived defendant of his ability to communicate with his attorney, required the application of *Cronic*'s presumption of prejudice and the grant of habeas corpus relief).

Therefore, contrary to the assertion by the Commonwealth and the conclusion of the dissenting judge below, the question of whether counsel's performance was hampered by Diaz' inability to communicate with him during trial is immaterial to the resolution of the issue before us. A criminal defendant's right to counsel guaranteed by the Sixth Amendment includes his right to consult with his attorney about the substance of trial during his trial (other than in the midst of his testimony). *Geders*, 425 U.S. at 88-91; *Perry*, 488 U.S. at 279-84; *Moore*, 275 F.3d at 688. Indeed, as the high Court has recognized, "the [Sixth] Amendment speaks of the 'assistance' of counsel, thus contemplating a norm in which the accused, and not a lawyer, is master of his own defense." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 n.10 (1979).

We further disagree with the Commonwealth that the United States Supreme Court's decision in *Bell* has any application to the issue raised before this Court. *Bell* involved a claim of ineffective assistance of counsel for waiving closing argument and the appellant asserted that *Cronic* applied based on counsel's failure to subject the prosecution's case to meaningful adversarial testing, as he "failed to 'mount some case for life'" at the sentencing hearing. *Bell*, 535 U.S. at 696. The *Bell* Court made clear that

*Cronic*'s presumption of prejudice "based on an attorney's failure to test the prosecutor's case" applied only to cases where the attorney's failure was complete. *Id.* at 696-97. Because, in *Bell*, the appellant did not claim that counsel entirely failed in his duty to oppose the prosecution's case throughout the sentencing proceeding, but that he failed to test the prosecution's case only at a specific point, the Court concluded that *Strickland*, and not *Cronic*, applied. *Id.* at 697.

The matter before us does not involve an allegation that trial counsel failed to test the prosecution's case. It is a question of whether the defendant's right to counsel was denied because of his inability to understand critical portions of his criminal trial, rendering him unable to have communications with counsel during those proceedings as protected by the Sixth Amendment. The PCRA court found that in the absence of an interpreter, Diaz could not understand anything that occurred during voir dire or opening statements or much of the potentially outcome determinative testimony of the complaining witness.[12]

---

[12] Under these circumstances, had Noonan or Attorney Walfish requested an interpreter for the first day of trial, Pennsylvania law would have required that the court provide one. Section 4412(a) and (b) of Title 42, governing the appointment of an interpreter, provides:

> **(a) Appointment of certified interpreter.--**Upon request or sua sponte, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed, unless the certified interpreter is unavailable as provided in subsection (b).

> **(b) Appointment of otherwise qualified interpreter.--**

> (1) An otherwise qualified interpreter shall be appointed by the presiding judicial officer if a good faith effort was made to obtain a certified interpreter and a certified interpreter was not reasonably available, as determined by the presiding judicial officer.

Because Diaz could not understand what was being said, he could not have communicated with his attorney about the substance of the proceedings. Such communications encompass discussions about witness testimony, lines of inquiry to pursue and tactical decisions, all of which are constitutionally protected. *Geders*, 425 U.S. at 88-91; *Perry*, 488 U.S. at 279-84; *Moore*, 275 F.3d at 688. The deprivation of the opportunity for such communication with counsel constitutes a violation of Diaz' right to the effective assistance of counsel under *Cronic*, requiring no inquiry into whether Diaz suffered prejudice because of this violation. *See Geders*, 425 U.S.at 91; *Cronic*, 466 U.S. at 659 & n.25; *Perry*, 488 U.S. at 272; *Moore*, 275 F.3d at 689. On this basis, we conclude

---

(2) Prior to the appointment of the otherwise qualified interpreter, the presiding judicial officer, pursuant to general rule, shall state on the record that a certified interpreter is not available and that the otherwise qualified interpreter:

(i) is readily able to interpret; and

(ii) has read, understands and agrees to abide by the code of professional conduct for court interpreters for persons with limited English proficiency, as established by the Court Administrator.

42 Pa.C.S. § 4412(a)-(b). This stems from the clear statement of policy by our General Assembly that an interpreter is necessary to secure the rights of a defendant who has a limited ability to speak or understand English:

It is hereby declared to be the policy of this Commonwealth to secure the rights, constitutional and otherwise, of persons who because of a non-English speaking cultural background or who because of an impairment of hearing or speech are unable to understand or communicate adequately in the English language when they appear in court or are involved in judicial proceedings. It is the intent of this chapter to provide for the certification, appointment and use of interpreters to secure the rights of persons with limited English proficiency and persons who are deaf or hearing impaired in all judicial proceedings.

*Id.* § 4401.

that the Superior Court correctly applied *Cronic* to find that no specific showing of prejudice was required because of the absence of an interpreter on the first day of trial.[13]

The judgment of the Superior Court is affirmed.

Chief Justice Saylor and Justices Baer, Todd and Wecht join the opinion.

Justices Dougherty and Mundy file dissenting opinions.

---

[13] Although violation of Diaz' right to counsel was not the basis for the decisions of the lower courts, we may affirm on any ground "where the correct basis for the ruling … is clear upon the record" and the pertinent facts have been resolved by the court of original jurisdiction. *In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018).