J-A10029-25                    2025 PA Super 131

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                          :        PENNSYLVANIA
          Appellant    :
                          :
                          :
        v.             :
                          :
                          :
DAVID PACHECO         :    No. 2204 EDA 2024

Appeal from the PCRA Order Entered August 15, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002243-2016

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY BECK, J.:                      **FILED JUNE 26, 2025**

       The Commonwealth of Pennsylvania appeals from the order entered by the Montgomery County Court of Common Pleas granting a new trial to David Pacheco ("Pacheco") pursuant to the Post Conviction Relief Act ("PCRA").[1] The PCRA court granted relief based upon its finding that his trial counsel provided ineffective assistance per se under ***United States v. Cronic***, 466 U.S. 648 (1984), by failing to secure a Spanish language interpreter for Pacheco at trial, as held by our Supreme Court in ***Commonwealth v. Diaz***, 226 A.3d 995 (Pa. 2020). The Commonwealth contends that the PCRA court failed to correctly apply the test for ineffectiveness under ***Cronic***. After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

**Legal Standards**

To provide better context for the argument before this Court, we begin with a recitation of the legal standards applicable to this appeal. When reviewing a court's decision regarding PCRA relief, we are limited to determining "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Johnson***, 236 A.3d 63, 68 (Pa. 2020) (citations omitted). Further, "we view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." ***Id.*** We employ a de novo review of the PCRA court's legal conclusions. ***Id.*** Its credibility determinations and factual findings that are supported by the record, however, "are binding upon us on appeal." ***Diaz***, 226 A.3d at 1007 (citation omitted).

A court's review of a claim of ineffective assistance of counsel begins with the strong presumption that counsel was effective. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018) (citation omitted). The test for ineffective assistance of counsel was first formally introduced in ***Strickland v. Washington***, 466 U.S. 668 (1984), wherein the United States Supreme Court held that to overcome that presumption, a petitioner must plead and prove two prongs. ***Id.*** at 687. First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Id.*** Second, "the defendant must show

that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Our Supreme Court in **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987), adopted **Strickland**, finding that there is no "greater or lesser protection under Article I, Section 9, of the Pennsylvania Constitution[] than the present federal standard." *Id.* at 976 (emphasis omitted). Although Pennsylvania's test for ineffectiveness is typically stated as three separate prongs—(1) the claim has arguable merit; (2) counsel lacked a reasonable basis for the action/inaction; and (3) prejudice resulted—the level of proof required is consistent with **Strickland**'s formula. *See, e.g., Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa. 2021); *see also Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (quotations and citation omitted).

Thus, a PCRA petitioner seeking to establish that prior counsel was ineffective in a Pennsylvania court generally has the burden to establish all three prongs, which we have defined as follows:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. The ultimate question

of whether facts rise to the level of arguable merit is a legal determination.

Regarding the second prong of the ineffectiveness test, … we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if [an] appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. …

With respect to the prejudice prong, [the petitioner must demonstrate that but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.] [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. The prejudice inquiry requires consideration of the totality of the evidence.

*Commonwealth v. Postie*, 200 A.3d 1015, 1023-24 (Pa. Super. 2018) (en banc) (cleaned up).

In the very rare case, prejudice is presumed "without inquiry into counsel's actual performance," because prejudice to the accused is so likely "that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 659, 662.[2] Such cases have been held to include "(1) the actual or constructive denial of counsel at a critical stage of trial; (2) when counsel fails entirely to provide 'meaningful adversarial testing' of the prosecution's case; and (3) circumstances wherein no lawyer, regardless of

_____

[2] Notably, *Strickland* and *Cronic* were both argued and decided on the same days.

- 4 -

general competency, could have provided effective assistance of counsel."

*Diaz*, 226 A.3d at 1008 (citing *Cronic*, 466 U.S. at 659).

> The defining feature of *Cronic* ineffectiveness cases is that the acts or omissions of counsel were the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame.

*Id.* (cleaned up; citation omitted); *see also Cronic*, 466 U.S. at 659 ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.").

Of particular relevance here, our High Court in *Diaz* found that the facts and circumstances there fell under the *Cronic* line of cases. Specifically, it held, based on the PCRA court's findings of fact as to Diaz's limited English proficiency (which were supported by the record), that trial counsel's failure to obtain an interpreter for Diaz on the first day of trial deprived him of the opportunity to communicate with his counsel regarding the trial proceedings that occurred, including "voir dire, opening statements, or much of the potentially outcome determinative testimony of the complaining witness." *Diaz*, 226 A.3d at 1010-11. It concluded that "[t]he Sixth Amendment right to counsel includes the right of the defendant to confer with his attorney about his case," the denial of which "constitutes the actual or constructive denial of counsel and triggers the application of *Cronic*'s presumption of prejudice." *Id.* at 1009, 1011 (citing *Cronic*, 466 U.S. at 659 & n.25; *Geders v. United States*, 425 U.S. 80 (1976)). It therefore held that the Superior Court had

correctly applied ***Cronic*** and granted the proper relief to Diaz in the form of a new trial.  ***Id.*** at 1011.

**Relevant Facts and Procedural History**

As the Commonwealth raises a purely legal argument, a full recitation of the facts is unnecessary.  Briefly, on January 10, 2016, during an orchestrated traffic stop, a police canine alerted detectives to the hood of Pacheco's car, where they subsequently found a car battery with heroin inside. After his arrest, the Commonwealth charged Pacheco with numerous crimes, including several counts each of possession of heroin with intent to deliver, criminal use of a communication facility, and dealing in proceeds of unlawful activities, as well as one count each of conspiracy to deliver a controlled substance and corrupt organizations.

Pacheco, who is a native Spanish speaker, retained the services of Attorney John McMahon, Jr., for his defense.  Attorney McMahon did not engage an interpreter for any of his pretrial meetings with Pacheco, relying instead on Pacheco's half-brother, Dario Martinez ("Dario"), to communicate with Pacheco about the case.[3]

Attorney McMahon also did not request an interpreter for the three-day trial, during which testimony was presented by both the Commonwealth and

_____

[3]  Further, Attorney McMahon stated that he visited Pacheco in prison a lot less than he typically did for other clients; when he had something he wanted to convey to Pacheco, he would call Dario and tell him to relay the message to Pacheco.  N.T., 3/13/2024, at 67.

defense that involved complicated legal terminology. Pacheco also testified in his defense. Throughout his direct examination, Pacheco exhibited obvious difficulty understanding Attorney McMahon's questions and frequently struggled to produce complete answers, repeated Attorney McMahon's questions back to him, or spoke in broken English that was difficult to discern. At one point, in response to Attorney McMahon's question as to whether Pacheco "can speak pretty good English," he stated, "No, not really, but I can try to speak. If you speak to me slow, I understand." N.T., 8/9/2017, at 131.

Pacheco raised a duress defense, claiming that he transported the heroin after being coerced to do so by members of the Jalisco cartel. *Id.* at 137. However, the language barrier left Pacheco unable to effectively communicate some of the most basic facts to support his defense, including threats to his family allegedly made to him by cartel members and that he received no share of the profits from the drugs he transported for the cartel. *See, e.g., id.* at 136-38, 140-41, 146-47. In fact, some of his answers could easily have been construed to contradict his claim of duress. *See, e.g., id.* at 144-45.

He fared even worse on cross-examination, incriminating himself several times and agreeing with the prosecutor to his detriment.[4] As he did

_____

[4] For instance, the Commonwealth asked, "So because somebody threatened you, you get a free pass to put heroin on the streets of our country?" to which Pacheco responded, "Yes." N.T., 8/9/2017, at 158. Later, the prosecutor
*(Footnote Continued Next Page)*

during his direct examination, Pacheco frequently provided incomplete answers to questions, asked for the Commonwealth to repeat questions, and spoke in broken English. **See, e.g., id.** at 165, 172, 174, 176. The prosecutor did not understand Pacheco at points either, asking him to repeat himself or to further explain his answer. **See, e.g., id.** at 173, 177, 180, 182-83, 190.

The jury ultimately found Pacheco guilty of all charges other than corrupt organizations. This Court affirmed the judgment of sentence. **Commonwealth v. Pacheco**, 227 A.3d 358 (Pa. Super. 2020). Our Supreme Court granted Pacheco's petition for allowance of appeal and ultimately affirmed as well. **See Commonwealth v. Pacheco**, 237 A.3d 396 (Pa. 2020); **Commonwealth v. Pacheco**, 263 A.3d 626 (Pa. 2021).

Pacheco filed a PCRA petition on October 3, 2022, raising nine claims of ineffective assistance by Attorney McMahon, including his failure to secure a Spanish language interpreter for Pacheco before and during trial. The trial court held evidentiary hearings over two days, during which two certified court interpreters provided interpretation for Pacheco.

---

asked Pacheco, "So this nonsense about you being just a courier or a mule, that's not the case; you're trusted by these people to carry large sums of money, aren't you?" and Pacheco responded, "Yes." **Id.** at 164. The attorney for the Commonwealth subsequently asked, "So you would agree with me that when push comes to shove here and you're in that situation, you resort to lying as opposed to telling the truth, correct?" and Pacheco again responded, "Yes." **Id.** at 169.

Friends and family members provided testimony as to Pacheco's limited English proficiency. *See, e.g.,* N.T., 12/11/2023, at 120, 132-33, 142-43, 146-47, 151, 156. Dr. Aneta Pavlenko provided expert testimony in the field of forensic linguistics and authored an expert report that was entered into evidence. She provided the following opinion:

> [A]t the time of the trial in August of 2017, Mr. Pacheco had an active English vocabulary of about 230 words, which constitutes about 1 percent of a native speaker's English vocabulary. He had intermediate English proficiency, which is sufficient to participate in familiar encounters, go shopping, to respond in a case of a traffic stop, but is insufficient to follow court proceedings and to meaningfully participate in his own defense.

*Id.* at 22.

Attorney McMahon also testified. He admitted that he "had a concern about [Pacheco's] ability to speak and especially understand" English that became clear to him "pretty early on in my representation." N.T., 3/13/2024, at 57-58. Further, he stated that he generally communicated with Pacheco's half-brother Dario about the case leading up to trial, not with Pacheco directly, so that Dario could translate for him. *Id.* at 59.

When asked about his decision not to enlist an interpreter at trial, Attorney McMahon said: "I don't like to use interpreters in a trial unless it is absolutely necessary, for various reasons." *Id.* at 60. His reasoning included that he wanted the jury to "hear from [Pacheco] kind of directly, without an interpreter, because … the jury getting to know the person and hopefully connect with the defendant is much more likely to occur if he's speaking

through the English language versus through an interpreter." *Id.* In addition, Attorney McMahon stated that "when you have an interpreter with somebody who can maybe speak English so-so but not great, they tend to start talking in English, even though there's an interpreter," which can "seem deceptive" to the jury. *Id.*

He acknowledged, though, that Pacheco's "ability to fully comprehend English" was "questionable," and testified that although he "really wasn't sure," he "kind of went with the idea that it was adequate." *Id.* at 62. Attorney McMahon did not investigate Pacheco's English proficiency, *id.* at 66, but his testimony reflects that he was aware of Pacheco's limitations prior to trial:

> I did the best I could in prepping him, but it was a bit challenging because, you know, he clearly has some deficiencies in I think more understanding English than speaking English. But I can't really quantify those exactly.
>
> But, you know, it was a concern, but I thought that under the circumstances, you know, we would just do the best we could because, you know, I found [Pacheco] to also be, from a personality standpoint, you know, a likeable guy.

*Id.* at 96. Attorney McMahon further admitted that there were several instances during the trial where he found Pacheco's inability to understand and fully answer questions in English concerning and damaging to his case. *See, e.g., id.* at 69-76, *see also id.* at 98 ("Well, in order to have any chance to prevail on a duress defense, which is a highly unusual defense because

- 10 -

you're basically admitting to the conduct to a large extent, it requires the defendant to testify to the nature and extent of the duress.").

The PCRA court entered an order finding Attorney McMahon was ineffective for failing to secure an interpreter for Pacheco and granting Pacheco a new trial on that basis. It found credible the lay testimony provided as to his limited English proficiency and that he communicated almost exclusively in Spanish. PCRA Court Order, 8/15/2024, at 7-8, ¶¶ 11, 13. It found this testimony was supported and bolstered by Dr. Pavlenko's expert testimony concerning Pacheco's limited ability to understand and communicate in English, which it also found to be credible. *Id.* at 8, ¶¶ 13-14. The PCRA court further took into account the trial record, which reflected Pacheco's failure to understand the questions posed, his responses in broken English and exhibiting confusion, and his statement on the witness stand that he could not speak or understand English very well. *Id.* at 7, 14, ¶¶ 12, 31. The PCRA court found that the absence of an interpreter resulted in his inability to meaningfully communicate with his counsel, prepare for trial, and to Pacheco incriminating himself while testifying. *Id.* at 8-9, ¶¶ 15-16.

Based upon these findings of fact and credibility determinations, the PCRA court found merit to Pacheco's ineffectiveness claim—that his due process rights were violated as Attorney McMahon "was aware of [Pacheco's] difficulty speaking English," which required that he "mainly communicate [with Pacheco] through [Pacheco's] brother, Dario Martinez." *Id.* at 8, ¶ 15.

However, in direct contradiction to this earlier conclusion of law, the PCRA court further found that Attorney McMahon "appear[ed]" to have "a reasonable basis for not getting an interpreter" and to be "unaware of the extent of [Pacheco's] English-speaking and comprehension ability until the day of trial." *Id.* at 12, 15 ¶¶ 26, 32; *see also id.* at 9, ¶¶ 17-18. Nonetheless, the PCRA court found it "interesting[]" that "the Commonwealth did not address the proposition that, under [*Cronic*], trial counsel's reasonable and strategic basis does not matter." *Id.* at 14, ¶ 30. It ultimately concluded that "trial counsel's inaction of securing an interpreter, before and at trial, constitutes constructive denial of counsel and per se ineffectiveness." *Id.* at 15, ¶ 33.

In its opinion authored pursuant to Pa.R.A.P. 1925(a), the PCRA court provided clarification of the basis for its decision. It explained that it found Attorney McMahon was ineffective per se based upon the Pennsylvania Supreme Court's decision in *Diaz*. PCRA Court Opinion, 9/16/2024, at 5. Specifically, the court concluded that the circumstances present in this case constitute the "constructive denial of counsel at a critical stage of trial," such that prejudice is presumed. *Id.* at 5-6 (citing *Diaz*, 226 A.3d at 1008; *Cronic*, 466 U.S. at 659). It further reiterated its conclusion that pursuant to *Cronic*, "the overwhelming evidence against [Pacheco] is of no consequence, nor is

- 12 -

the fact that trial counsel proffered a reasonable basis for not securing an interpreter."[5]  *Id.* at 7.

The Commonwealth filed a timely appeal and now raises the following issue for our review: "Whether the PCRA court committed legal error when it granted [Pacheco] a new trial based on an ineffectiveness claim even though it determined that trial counsel had a reasonable basis?"  Commonwealth's Brief at 4.

## Arguments

The Commonwealth argues that the PCRA court committed legal error by granting Pacheco a new trial because it employed an erroneous application of *Cronic*.  *Id.* at 22.  Specifically, the Commonwealth contends that the PCRA court improperly absolved Pacheco of proving that Attorney McMahon had no reasonable strategic basis for his decision not to employ an interpreter either prior to or at trial, as *Cronic* excuses only proof of the prejudice prong of the ineffectiveness test.  *Id.*

The Commonwealth observes that Attorney McMahon provided testimony in support of his decision not to hire an interpreter:

> Trial counsel testified at the PCRA hearings that defendant's English was "adequate" and "pretty fairly good for the most part"

_____

[5]  The PCRA court reiterated that in his testimony, Attorney McMahon "proffered a reasonable basis for not securing an interpreter," but this time did not find that was, in fact, a reasonable basis for counsel's inaction.  PCRA Court Opinion, 9/16/2024, at 7.  Instead, it went on to state that "**[e]ven if** there was a strategic basis, trial counsel's strategy cannot trump [Pacheco]'s constitutional rights."  *Id.* at 8 (emphasis added).

(N.T. 3/13/24, 62). He also testified that he thought it was important that defendant testify without an interpreter because he believed that his personality—a likeable guy—would come across to the jury better that way (*id.* at 60, 96-97). Based on his interactions with defendant, trial counsel did not believe defendant needed an interpreter to understand the proceedings.

Commonwealth's Brief at 22. The PCRA court acknowledged this testimony but nonetheless applied **Cronic** to find that trial counsel's strategy was irrelevant and that Attorney McMahon was per se ineffective. **Id.** According to the Commonwealth, "[t]his is error," as a finding that trial counsel had a reasonable basis for not requesting an interpreter "should have ended the matter." **Id.** at 23. The Commonwealth notes the PCRA court's reliance upon **Diaz**, but contends that the **Diaz** Court "did not jettison the reasonable basis prong in **Cronic** presumed prejudice cases," contending "there was indeed a determination in that case that counsel had no reasonable basis." **Id.** at 23 (citing **Diaz**, 226 A.3d at 1002).[6]

The Commonwealth recognizes the incongruity between the PCRA court's finding that Attorney McMahon had a reasonable strategic basis for not requesting an interpreter and its conclusion that Pacheco could not understand what was being said at trial. **Id.** at 23. In an attempt to "synthesize[]" these

_____

[6] This finding was not made by our Supreme Court, but by the PCRA court in **Diaz**. **See Diaz**, 226 A.3d at 1002. Unlike the Supreme Court, which relied upon **Cronic** to decide the case, the PCRA court assessed the matter under the traditional three-pronged ineffective assistance of counsel test. **See id.** As discussed below, the Supreme Court in **Diaz** engaged in no discussion of whether or not counsel had a reasonable basis for his failure to request an interpreter on the first day of trial.

conflicting rulings, the Commonwealth contends that the PCRA court must have found that trial counsel "acted reasonably based on what he knew before trial"—without the benefit of transcripts or hearing Pacheco's testimony—which turned out to be incorrect. *Id.* According to the Commonwealth, "Such reasonable—but incorrect—decisions ... are protected under the ineffectiveness standard." *Id.* at 23-24 (citing *Harrington v. Richter*, 562 U.S. 86, 110 (2011), for the proposition that "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation").

In his brief before this Court, Pacheco begins, in pertinent part, by criticizing the Commonwealth's "selective reading of trial counsel's testimony," which he contends "distorts trial counsel's view of [Pacheco's] ability to understand the proceedings against him." Pacheco's Brief at 24. Recounted in context, Pacheco observes that trial counsel stated:

> I did not view [Pacheco] as falling in that category of not being able to speak any English. Obviously, he could speak some English, you know, pretty fairly good for the most part. The understanding part is a little bit more hazy for me and a little bit more questionable in terms of, you know, the ability to fully comprehend English. But I thought that his abilities, even though I really wasn't sure, I kind of went with the idea that it was adequate.
>
> . . .
>
> I mean, it certainly was clear, very clear to me as a bell, that if you didn't speak really slowly or moderately slowly, let's say he could lose what's being said. That, I believed.

*Id.* at 24-25 (quoting N.T., 3/13/2024, at 62).

Pacheco continues, asserting that the PCRA court correctly applied ***Cronic*** without consideration of whether Attorney McMahon had a reasonable strategic basis for his failing, as "***Cronic*** errors, which are structural in nature and involve 'an actual breakdown of the adversarial process' are assessed 'without inquiring into counsel's actual performance.'" ***Id.*** at 34 (quoting ***Bell v. Cone***, 535 U.S. 685, 695 (2002); ***Cronic***, 466 U.S. at 657). Pursuant to ***Diaz***, Pacheco contends that the PCRA court correctly held that trial counsel's failure to secure an interpreter was a structural error requiring reversal. ***Id.***

If this Court finds that Pacheco was required to show that counsel lacked a reasonable strategic basis for his inaction here, he alternatively argues that "the PCRA court correctly concluded that **any reason** that trial counsel could proffer for such an omission could never be 'strategic,' as it would have the effect of denying a criminal defendant his constitutional right to participate in all critical stages of the proceedings against him." ***Id.*** at 35 (emphasis original). He disagrees with the Commonwealth's assessment that the PCRA court found that Attorney McMahon had a reasonable basis for failing to secure an interpreter, in either its order or its 1925(a) opinion, as the PCRA court made clear that this constituted a denial of counsel, and any basis given by trial counsel could not usurp Pacheco's constitutional rights. ***Id.*** at 37-38.

Further, to the extent the PCRA court did find a reasonable strategic basis in its order, Pacheco contends that this is not binding, as it did make this finding in its 1925(a) opinion. ***Id.*** at 35-36. According to Pacheco, we

- 16 -

should look to the 1925(a) opinion, not its order, to discern the lower court's reasoning, as the opinion contains "the reasons for the order" (citing Pa.R.A.P. 1925(a)), gives that court the chance "to correct any problems that occurred at the trial level" (citing ***Commonwealth v. Pate***, 617 A.2d 754, 758-59 (Pa. Super. 1992)), and can be used "expressly to amend or even supersede its rationale from an earlier opinion" (citing ***Temple Estate of Temple v. Providence Care Ctr., LLC***, 233 A.3d 750 (Pa. 2020)). Pacheco's Brief at 36-37. The PCRA court found in its 1925(a) opinion that Attorney McMahon lacked a reasonable strategic basis for failing to obtain an interpreter for Pacheco, which Pacheco states was correct. ***Id.*** at 37. Indeed, he observes, counsel's failure to obtain an interpreter was a statutory violation, the protections of which cannot be discarded "as a matter of 'trial strategy.'" ***Id.*** at 40 (citing 42 Pa.C.S. § 4401 (stating "the policy of this Commonwealth" as securing the rights of those who are, inter alia, non-native English speakers that cannot understand or communicate sufficiently in English when they are in court through the "certification, appointment and use of interpreters" in judicial proceedings)).

The National Association of Judiciary Interpreters and Translators ("NAJIT") filed an amicus brief in support of Pacheco. It recounts our High Court's recognition that the use of the services of an interpreter encompasses and protects a number of fundamental rights, including those addressed to witness confrontation, attorney consultation, and participation at trial.

NAJIT's Brief at 4 (citing **Commonwealth v. Pana**, 364 A.2d 895, 898 (Pa. 1976)); **see also id.** at 11-17. NAJIT further points to the 2006 passage of the Pennsylvania Interpreter Act and the recognition by both then-Governor Rendell and the Supreme Court Committee on Racial and Gender Bias in the Justice System of the critical need that interpreters address to ensure that every person, regardless of their English proficiency, receive due process and equal protection. **Id.** at 5-6 (citations omitted). According to NAJIT, a strategy by trial counsel not to use the services of an interpreter for a criminal defendant who needed one (like Pacheco) denied him of these fundamental rights and can never be deemed "reasonable." **Id.** at 10-11.

### Analysis

The Commonwealth's argument before this Court presents a fundamental misunderstanding of the difference between **Cronic** ineffectiveness and ineffectiveness found pursuant to **Strickland**. **Strickland** ineffectiveness is directed to the propriety of a particular act or omission by counsel that may (or may not) have affected the outcome of the case; **Cronic**, however, deals with a global failure to function as counsel as constitutionally guaranteed. **See Cronic**, 466 U.S. at 667 n.41 (observing that ineffectiveness pursuant to **Cronic** is addressed to "counsel's overall performance, and not one based on particular errors or omissions," the latter of which is properly evaluated under **Strickland**); **see also Mickens v. Taylor**, 535 U.S. 162, 210 (describing **Cronic** as providing a "categorical approach in the event of

[an] 'actual breakdown of the adversarial process'"). "[T]he circumstance-specific reasonableness inquiry [is] required by **Strickland**," whereas **Cronic** serves as an exception to the requirement that courts conduct a performance-based inquiry. **Roe v. Flores-Ortega**, 528 U.S. 470, 478, 481-82 (2000). Only under **Strickland** is a petitioner "required … to show that counsel's … strategy was unreasonable." **Florida v. Nixon**, 543 U.S. 175, 189 (2004). Thus, the PCRA court correctly found that, in cases where **Cronic** applies, no inquiry into the reasonableness of counsel's decision is warranted.[7] **See Postie**, 200 A.3d at 1023 n.6 (stating, in dicta, that ineffectiveness under **Cronic** "eliminates a petitioner's requirement to prove the second and third prongs of the traditional ineffectiveness test") (citing **Cronic**).

The Commonwealth does not challenge the PCRA court's finding that, as in **Diaz**, **Cronic** is applicable under the facts of this case because Attorney McMahon's failure to secure an interpreter for Pacheco at trial constituted the constructive denial of counsel at critical stages of the proceeding.[8] We

_____

[7] Despite Pennsylvania's standalone requirement under **Pierce** that the petitioner plead and prove that counsel had no reasonable strategic basis for the action/inaction alleged, no Pennsylvania Supreme Court case applying **Cronic** has engaged in an inquiry into the reasonableness of counsel's strategy. **See, e.g., Diaz**, 226 A.3d 995; **Commonwealth v. Rosado**, 150 A.3d 425 (Pa. 2016); **Commonwealth v. Halley**, 870 A.2d 795 (Pa. 2005); **Commonwealth v. Liebel**, 825 A.2d 630 (Pa. 2003).

[8] Indeed, the facts of this case are even more egregious than they were in **Diaz**, as instead of a single day without an interpreter, Pacheco had no interpreter for the entirety of the trial.

nonetheless note, for purposes of completeness, that like the PCRA court in *Diaz*, the findings of fact made by the PCRA court establishing that Pacheco was unable to speak and understand the English language sufficient to communicate with his attorney and understand the proceedings have ample record support. *See Diaz*, 226 A.3d at 1007.

### Conclusion

We find no error in the PCRA court's determination that Attorney McMahon was ineffective per se based upon his failure to secure an interpreter for Pacheco during the proceedings. We therefore affirm the PCRA court's decision granting Pacheco a new trial.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2025